# USB 3.0 CONTRIBUTORS AGREEMENT

This USB 3.0 Contributors Agreement ("Agreement") is entered into by and between the Promoters (as defined below) and the contributing party set forth on the signature page below, and its Affiliates ("Contributor").

## RECITALS

Whereas, the Promoters have not yet completed drafting or adopted the Universal Serial Bus release 3.0 ("USB 3.0") Final Specification;

Whereas, Contributor wishes to review and comment upon preliminary drafts of the USB 3.0 specification that are circulated by the Promoters for the purpose of formulating the Final Specification, and the Promoters are willing to include the Contributor in those portions of their deliberative process in which Contributor has specific expertise; and

Whereas, the Promoters and Contributor desire to have the following conditions apply to this Contributors Agreement;

Now, therefore, in consideration of the mutual promises and conditions contained herein, the Promoters and Contributor agree as follows:

## 1. DEFINITIONS

1.1 "Adopter" means any entity that has executed a copy of the USB 3.0 Adopters Agreement within the Adoption Period and delivered it to the Secretary.

1.2 "Adoption Period" for any given Adopter means any time prior to the later of the date one (1) year after: (i) the public release date of the Final Specification, or (ii) the first sale by such Adopter of a product that includes a Compliant Portion; or (iii) a date set upon vote of at least two-thirds (2/3) of the Promoters.

1.3 "Affiliate" means any entity that is directly or indirectly controlled by, under common control with or that controls the subject party; provided however, that Affiliate shall not include any entity identified by a Contributor on the signature page of this Agreement as an "Excluded Affiliate". For purposes of this definition control means direct or indirect ownership of or the right to exercise (a) greater than fifty percent (50%) of the outstanding shares or securities entitled to vote for the election of directors or similar managing authority of the subject entity; or (b) greater than fifty percent (50%) of the ownership interest representing the right to make the decisions for the subject entity; provided, however, that in each case such entity shall be deemed to be an Affiliate only so long as such ownership or control exists and is more than fifty percent (50%).

1.4     "Contributions" means submissions proposing additions to or modifications of the Draft Specification, provided that the submission is either (i) submitted in writing (including a writing in electronic medium) or (ii) stated orally, memorialized with specificity in the written minutes of a meeting, attributed in such minutes to the submitter, which minutes are provided within a customary time to the individual representing the submitter.

1.5     "Compliant Portion" means only those specific portions of products (hardware, software or combinations thereof) that implement and to the extent they are compliant with the Final Specification (as applicable to such portions), provided that such portions are within the bounds of the Scope.

1.6     "Draft Specification" means all versions of the document entitled "Universal Serial Bus 3.0 Specification" and all written comments thereto or any other written information provided by any Promoter or Contributor for the purpose of creating, commenting on, revising, updating, modifying, or any to any documents that are to be considered for inclusion in the Final Specification by the Promoters.

1.7     "Final Specification" means any version of the USB 3.0 Specification as adopted and published by the Promoters. For purposes of this definition, the Final Specification shall not include any implementation examples unless such implementation examples are expressly identified as being included as part of the limited patent license in the Final Specification as adopted.

1.8     "Necessary Claims" means claims of a patent or patent application that (a) are owned or controlled by a party, now or at any future time; and (b) are necessarily infringed by implementing those portions of the Final Specification within the bounds of the Scope, wherein a claim is necessarily infringed only when it is not possible to avoid infringing it because there is no commercially reasonable non-infringing alternative for implementing such portions of the Final Specification within the bounds of the Scope. Notwithstanding the foregoing sentence, Necessary Claims do not include any claims (x) other than those set forth above even if contained in the same patent or patent application as Necessary Claims; (y) that read solely on any implementations of any portion of the Final Specification that are not within the bounds of the Scope; or (z) that, if licensed, would require consent from, and/or a payment of royalties by the licensor to, unaffiliated third parties.

1.9     "Promoters" means each company that has executed a USB 3.0 Specification Promoters Agreement and its Affiliates.

1.10    "Scope" means the protocols, electrical signaling characteristics, mechanical requirements for connectors and cabling, and firmware descriptors and device and driver architectures, solely to the extent disclosed with particularity in the Final Specification where the sole purpose of such disclosure is to enable products to interoperate, interconnect or communicate as defined within the Final Specification. Notwithstanding the foregoing, the Scope shall not include (i) any enabling technologies that may be necessary to make or use any product or portion thereof that complies with the Final Specification, but are not themselves expressly set forth in the Final Specification (e.g., semiconductor manufacturing technology, compiler technology, object oriented technology, operating system technology, etc.); or (ii) the implementation of other published specifications developed outside of this Agreement but referred to in the body of the Final

Specification; or (iii) any portions of any product and any combinations thereof the sole purpose or function of which is not required for compliance with the Final Specification.

1.11 "Secretary" means the party identified by the Promoters as the secretary for the Final Specification.

1.12 "Trademarks" shall have the meaning assigned in Section 5.

## 2. COMPLIANCE WITH ANTITRUST LAWS

Contributor and the Promoters are committed to fostering open competition in the development of products and services based on the Final Specification. Contributor and the Promoters understand that in certain lines of business they are or may be direct competitors and that it is imperative that they and their representatives act in a manner which does not violate any state, federal or international antitrust laws and regulations. Without limiting the generality of the foregoing, Contributor and the Promoters acknowledge that this Agreement prohibits any communications regarding costs, prices, quantity or quality of production levels, methods or channels of distribution, markets, customers, exclusion of competitors or any other topic that may be construed as a violation of antitrust laws. Accordingly, Contributor and each Promoter will counsel its representatives who participate in any activities under this Agreement on the importance of limiting the scope of their discussions and communications to the topics that relate to the purposes of this Agreement, whether or not such discussions and communications take place during formal meetings, informal gatherings, or otherwise.

## 3. SUBMISSIONS TO PROMOTERS

Contributor understands that all submissions it makes to the Promoters with regard to Draft Specifications shall be governed by the following:

3.1 Confidentiality of Contributor Submissions. Contributor agrees that any Contribution shall be deemed to be made on a non-confidential basis.

3.2 Copyright License. Contributor does hereby grant and will grant, and shall cause each of its Affiliates to grant to each Promoter and their Affiliates a license under its copyrights in its Contributions to reproduce, distribute, display, perform, and create derivative works of any Contribution or Draft Specification or derivative work thereof.

3.3 Copyrights in Final Specification. Effective as of the adoption of the Final Specification, Contributor hereby conveys and shall cause each of its Affiliates to convey, to each Promoter a non-exclusive, undivided, and equal ownership in the copyrights in the Final Specification, subject to the underlying copyright ownership rights of the Contributions of Contributor. Each Promoter may exercise any and all rights of copyright ownership and sublicense such rights in the Final Specification as if such rights were solely owned by such Promoter and without permission of the Contributor and without any duty to account. Additionally, effective as of the adoption of the Final Specification, Contributor hereby grants, and shall cause each of its Affiliates to grant,

to the USB Implementers Forum, Inc. ("USB-IF") a worldwide, non-exclusive, non-transferable, royalty-free copyright license, with right to sublicense, to use, reproduce, publicly perform, publicly display, and distribute the Final Specification, in whole or in part.

3.4     Limited Patent Licensing Obligation in Contributions. Effective upon the Promoters adoption of the Final Specification, for any Contributions made by Contributor, Contributor hereby agrees that upon request, it will, and will cause its Affiliates to, grant to any Promoter or Adopter, and their respective Affiliates, (collectively "Licensee") a non-exclusive, world-wide license under any Necessary Claim of a patent or patent application reading on such Contributions, to make, have made, use, import, sell, offer to sell, and otherwise dispose of Compliant Portions; provided that such license need not extend to any part or function of a product in which a Compliant Portion is incorporated that is not itself part of the Compliant Portion. Such license shall be granted on a royalty-free basis and under otherwise reasonable and non-discriminatory ("RAND-Zero") terms, provided that such license grant may be conditioned upon, including but not limited to, the Licensee's grant of a reciprocal license binding Licensee.

3.5     Non-Circumvention. Contributor agrees (i) that neither it nor any Affiliate has transferred patents nor granted exclusive licenses having Necessary Claims, and (ii) that it will not transfer patents or grant exclusive licenses having Necessary Claims, and (iii) that it will cause its Affiliates to refrain from transferring patents or granting exclusive licenses having Necessary Claims, for the purpose of circumventing such Contributor's obligations under this Agreement.

4.      **CONFIDENTIALITY**

4.1     Draft Specification. Until the Promoters adopt the Final Specification and make it generally publicly available, Contributor will maintain all versions and revisions of the Draft Specifications ("Confidential Material") in confidence with at least the same degree of care that it uses to protect its own confidential and proprietary information, but no less than a reasonable degree of care under the circumstances and will not use, disclose or copy the Confidential Material except as necessary for its employees and employees of Affiliates with a need to know to evaluate and comment thereon. Contributor shall mark any copies it makes "confidential," "proprietary" or with a similar legend and shall reproduce all copyright notices and disclaimers therein. Unless the parties agree otherwise, this obligation of confidentiality will expire five (5) years from the date of disclosure to Contributor.

4.2     Press Release. Contributor agrees that any of the Promoters may make a press or other public announcement regarding its activities as a Promoter and may include the identity of Contributor in such announcement.

5.      **TRADEMARKS**

Contributor hereby agrees not to assert, and shall cause its Affiliates not to assert, against any Promoter or its Affiliates or Adopter or its Affiliates any trademark, trade name, or similar rights it may have now or hereafter in the names "Universal Serial Bus", "USB", or "USB 3.0" (collectively "Trademarks").

## 6. GENERAL

6.1     Effective Date. This Agreement shall become effective when the Secretary receives an original, fully executed copy hereof.

6.2     No Other Licenses. Except for the rights expressly provided by this Agreement, no Promoter or Contributor grants or receives, by implication, or estoppel, or otherwise, any rights under any patents or other intellectual property rights.

6.3     No Warranty. All parties acknowledge that all information provided as part of the Final Specification development process and any Draft Specification and/or Final Specification itself are all provided "AS IS" WITH NO WARRANTIES WHATSOEVER, WHETHER EXPRESS, IMPLIED, STATUTORY, OR OTHERWISE, AND THE PARTIES EXPRESSLY DISCLAIM ANY WARRANTY OF MERCHANTABILITY, NONINFRINGEMENT, FITNESS FOR ANY PARTICULAR PURPOSE, OR ANY WARRANTY OTHERWISE ARISING OUT OF ANY PROPOSAL, SPECIFICATION, OR SAMPLE.

6.4     Limitation of Liability. IN NO EVENT WILL ANY PARTY HERETO BE LIABLE TO ANY OTHER FOR THE COST OF PROCURING SUBSTITUTE GOODS OR SERVICES, LOST PROFITS, LOSS OF USE, LOSS OF DATA OR ANY INCIDENTAL, CONSEQUENTIAL, INDIRECT, OR SPECIAL DAMAGES, WHETHER UNDER CONTRACT, TORT, WARRANTY OR OTHERWISE, ARISING IN ANY WAY OUT OF THIS OR ANY OTHER RELATED AGREEMENT, WHETHER OR NOT SUCH PARTY HAD ADVANCE NOTICE OF THE POSSIBILITY OF SUCH DAMAGES.

6.5     Notices. All notices to Contributor hereunder shall be in writing and sent to Contributor at the address as set forth on the signature page below, or at such address as the Contributor may later specify by such written notice. All notices to the Promoters hereunder shall be in writing and sent to the Secretary at the address set forth below, or at such address as the Secretary may later specify by such written notice. For purposes of this Section 6.5, written notice shall not include notice by electronic mail or by facsimile.

Notices to Promoters:
>    Intel Corporation
>    2111 NE 25th Avenue
>    Mailstop JF3-212
>    Hillsboro, OR  97124
>    Attn: Jeff Ravencraft, Secretary
>    Subject: USB 3.0 Specification

Such notices shall be deemed served when received by addressee or, if delivery is not accomplished by reason of some fault of the addressee, when tendered for delivery. Any party may give written notice of a change of address and, after notice of such change has been received, any notice or request shall thereafter be given to such party at such changed address.

6.6     Governing Law. This Agreement shall be construed and controlled by the laws of the State of New York without reference to conflict of laws principles.

6.7     Jurisdiction. The parties agree that all disputes arising in any way out of this Agreement shall be heard exclusively in, and all parties irrevocably consent to jurisdiction and venue in, the state and Federal courts of New York, New York.

6.8     Good Faith Dealing. Contributor hereby represents and warrants that it has power to cause all patents owned or controlled by it and all of its Affiliates to be licensed as set forth in this Agreement.

6.9     Not Partners. The parties hereto are independent companies and are not partners or joint venturers with each other.

6.10    Complete Agreement; No Waiver. This Agreement sets forth the entire understanding of the parties and supersedes all prior agreements and understandings relating hereto. No modifications or additions to or deletions from this Agreement shall be binding unless accepted in writing by an authorized representative of all parties, and the waiver of any breach or default will not constitute a waiver of any other right hereunder or any subsequent breach or default.

6.11    No Rule of Strict Construction. Regardless of which party may have drafted this Agreement, no rule of strict construction shall be applied against any party. If any provision of this Agreement is determined by a court to be unenforceable, the parties shall deem the provision to be modified to the extent necessary to allow it to be enforced to the extent permitted by law, or if it cannot be modified, the provision will be severed and deleted from this Agreement, and the remainder of the Agreement will continue in effect.

6.12    Compliance with Laws. Anything contained in this Agreement to the contrary notwithstanding, the obligations of the parties hereto shall be subject to all laws, present and future, of any government having jurisdiction over the parties hereto, and to orders, regulations, directions or requests of any such government.

6.13    Parties. The Promoter executing this Agreement has the authority and by signing this agreement does hereby bind all the Promoters to this Agreement.

6.14    Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but collectively shall constitute one and the same instrument.

In witness of this agreement, the parties execute this agreement as follows:

Name of Promoter:

**Intel Corporation**

By: _[signature]_

Name: **Steven E. Spina**

Title: **Director**

Date: 02/25/2008


Name of Contributor:           Address for Notices:

LOTES, CO., LTD           2196 NW Jessamine Way

By: _[signature]_           Portland, OR 97229

Name: REGINA LIU-HWANG

Title: Regional Business Manager

Date: Dec 11, 2007           Email contact address:

regina.liu-hwang@lotes.com.tw

Affiliate Exclusion Notice: Contributor hereby notifies the Promoters that the following of its Affiliates shall not be bound by this Agreement nor be entitled to the rights and benefits of Contributor ("Excluded Affiliate(s)"). Contributor agrees that Confidential Information may not be shared with Excluded Affiliates. Contributor acknowledges and agrees that if the licensing rights for any Necessary Claim are controlled by an Excluded Affiliate, Contributor shall either (i) take steps to ensure that such Excluded Affilate makes available such Necessary Claims in accordance with the licensing terms and obligations set forth in this Agreement, or (ii) indemnify and hold harmless each Promoter and its Affiliates, and each Adopter and its Affiliates from any claim, loss or other damage incurred due to the Excluded Affiliate's failure to do so.

Excluded Affiliates (if any): _____