**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

_____

| | | |
|---|---|---|
| LOTES CO., LTD. | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **12-cv-7465 (SAS)** |
| | ) | |
| | ) | **ECF Case** |
| HON HAI PRECISION INDUSTRY CO. LTD.; | ) | |
| FOXCONN INTERNATIONAL HOLDINGS, INC.; | ) | |
| FOXCONN INTERNATIONAL, INC.; FOXCONN | ) | |
| ELECTRONICS, INC.; and FOXCONN (KUNSHAN) | ) | |
| COMPUTER CONNECTOR CO., LTD. | ) | **ORAL ARGUMENT** |
| | ) | **REQUESTED** |
| Defendants. | ) | |

_____

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, N.Y. 10178
Tel: 202.309.6000

*Counsel for Hon Hai Precision Industry Co., Ltd.,*
*Foxconn International, Inc., and Foxconn Electronics, Inc.*

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ....................................................................................................1

II.     BACKGROUND ....................................................................................................2

III.    LEGAL STANDARD ...........................................................................................4

IV.     ARGUMENT ........................................................................................................5

    A.    Breach of the Contributors Agreement Cannot Plausibly Be Inferred from
the Facts Alleged in the Complaint ...........................................................5

    B.    Plaintiff Has Not Suffered Antitrust Injury ..............................................7

    C.    The China Lawsuits Are Protected by the Noerr-Pennington Doctrine .............11

    D.    There Is No "Agreement" or "Conspiracy" Validly Pled to Support the
Antitrust Claims ......................................................................................13

    E.    Plaintiff Alleges No Facts That Would Plausibly Suggest a "Dangerous
Probability" That Any Defendant Will Acquire Monopoly Power .....................14

    F.    U.S. Antitrust and Tort Law Does Not Reach the Conduct Plaintiff
Alleges .....................................................................................................16

        1.    Plaintiff's Sherman Act Claims Are Barred By the FTAIA.....................16

        2.    New York Tortious Interference Law Does Not Apply
Extraterritorially ...........................................................................19

    G.    Plaintiff's Promissory Estoppel (Second Count) And Waiver (Third
Count) Claims Are Facially Invalid ........................................................19

    H.    The Court Should Defer Plaintiff's Declaratory Judgment Claim to Courts
in China ...................................................................................................20

V.      CONCLUSION ...................................................................................................21

i

# TABLE OF AUTHORITIES

**Page(s)**

C ASES

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................4

*Bath Petroleum Storage, Inc. v. Market Hub Partners*,
  No. 00-7302, 2000 U.S. App. LEXIS 25440 (2d. Cir. Oct. 11, 2000) ................................12

*Bayer Schering Pharma AG v. Bayer Healthcare*,
  813 F. Supp. 2d 569 (S.D.N.Y. 2011) ..................................................................16

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................4

*Beyer Farms v. Elmhurst Dairy Co.*,
  142 F.Supp. 2d 296.................................................................................................13

*Boyd v. AWB Limited*,
  544 F. Supp. 2d 236 (S.D.N.Y. 2008) ..................................................................17

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
  429 U.S. 477 (1977) ..........................................................................................7, 8

*Brunswick Corp. v. Riegel Textile Corp.*,
  752 F.2d 261 (7th Cir. 1984) ................................................................................11

*Capital Imaging Assocs. v. Mohawk Valley Med. Assocs., Inc.*,
  996 F.2d 537 (2d Cir. 1993) .................................................................................13

*Components Inc. v. Western Elec. Co.*,
  318 F. Supp. 959 (D. Maine 1970).......................................................................21

*Copperweld Corp. v. Indep. Tube Corp.*,
  467 U.S. 752 (1984) .............................................................................................13

*Elecs. Commc'ns Corp. v. Toshiba Am. Consumer Prods., Inc.*,
  129 F.3d 240 (2d Cir. 1997) .................................................................................13

*Energex Lighting Indus., Inc., v. North Am. Philips Lighting Corp.*,
  656 F. Supp. 914 (S.D.N.Y. 1986) .......................................................................13

*Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*,
  414 F.3d 325 (2d Cir. 2005) .................................................................................19

*Franklin v. BAC Home Loans Servicing*,
No. 3:10-cv-1174-M, 2012 WL 2679496 (N.D.Texas, June 6, 2012) ................................... 20

*Global Reinsurance Corp. v. Equitas Ltd.*,
18 N.Y.3d 722 (N.Y. 2012) ............................................................................................ 19

*Hon Hai Precision Indus. Co. v. Molex Inc.*,
No. 08-C-5582, 2009 WL 310890 (N.D. Ill. Feb. 9, 2009) .......................................... 15

*Honeywell Int'l v. Universal Avionics Sys.*,
488 F.3d 982 (Fed. Cir. 2007) ...................................................................................... 12

*Ideal Instruments v. Rivard Instruments*,
434 F. Supp. 2d 598 (N.D. Iowa 2006) ........................................................................ 20

*In re Ciprofloxacin Hydrochloride Antitrust Litig.*,
363 F. Supp. 2d 514 (E.D.N.Y. 2005) ............................................................................ 8

*In re Elevator Antitrust Litig.*,
502 F.3d 47 (2d Cir. 2007) ............................................................................................. 4

*In re Intel Corp., Microprocessor Antitrust Litig.*,
452 F. Supp. 2d 555 (D. Del. 2006) ....................................................................... 17, 18

*In re Tamoxifen Antitrust Litig.*,
466 F.3d 187 (2d Cir. 2006) ........................................................................................... 8

*Int'l Distrib. Ctrs., Inc. v. Walsh Trucking*,
812 F.2d 786 (2d Cir. 1987) ......................................................................................... 15

*Ixe Banco v. MBNA Am. Bank*,
No. 07-civ-0432(LAP), 2008 WL 650403 (S.D.N.Y. Mar. 7, 2008) ............................ 20

*Karmilowicz v. Hartford Fin. Servs.*,
No. 11-3284-cv, 2012 WL 3734449 (2d Cir. Aug. 30, 2012) ...................................... 19

*La Flamme v. Societe Air Fance*,
702 F. Supp. 2d 136 (E.D.N.Y. 2010) .......................................................................... 14

*Labor Union of Pico Korea Ltd. v. Pico Prods., Inc.*,
968 F.2d 191 (2d Cir. 1992) ......................................................................................... 19

*Mars Inc. v. Kabushiki-Kaisa Nippon Conlux*,
24 F.3d 1368 (Fed. Cir. 1994) ...................................................................................... 20

*Mitchael v. Intracorp., Inc.*,
179 F.3d 847 (10th Cir. 1999) ...................................................................................... 14

*NYNEX Corp. v. Discon, Inc.*,
    525 U.S. 128 (1998) ................................................................................... 7, 9, 10, 11

*Precision Associates, Inc. v. Panalpina World Trans.*,
    No. 08-cv-42(JG)(VVP), 2011 WL 7053807 (E.D.N.Y. Jan. 4, 2011) ................................. 14

*Primetime 24 Joint Venture v. Nat'l Broad Co.*,
    219 F.3d 92 (2d Cir. 2000) ................................................................................. 13

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49 (1993) ...... 11, 12

*Rambus, Inc.v. FTC*,
    522 F.3d 456 (D.C. Cir. 2008) ........................................................................ 9, 10, 11

*Spectrum Sports, Inc. v. McQuillan*,
    506 U.S. 447 (1993) .......................................................................................... 14, 15

*Starr v. Sony BMG Music Entm't*,
    592 F.3d 314 (2d Cir. 2010) ................................................................................... 4

*Syncsort Inc. v. Sequential Software, Inc.*,
    50 F. Supp. 2d 318 (D.N.J. 1999) ............................................................................ 16

*U.S. v. LSL Biotech.*,
    379 F.3d 672 (9th Cir. 2004) .................................................................................. 17

**STATUTES**

Declaratory Judgment Act, 28 U.S.C. § 2201 ................................................................. 19

Foreign Trade Antitrust Improvements Act 15 U.S.C. § 6a ("FTAIA") ................................. 16, 17

Sherman Act, 15 U.S.C. §§ 1, 2 .................................................................................. 13

**OTHER AUTHORITIES**

18 Am. Jur. 2d, *Estoppel and Waiver* § 183 (2012). .................................................... 20

## I.    <u>INTRODUCTION</u>

Defendants Hon Hai Precision Industry Co., Ltd., Foxconn International, Inc., and Foxconn Electronics, Inc. submit this memorandum in support of their motion to dismiss the claims brought by Plaintiff Lotes Co., Ltd.[1]

This action is a counter attack to patent lawsuits brought in China by Foxconn (Kunshan) – an unserved Defendant located in China – against Plaintiff, a Taiwanese company, concerning technology for Universal Serial Bus ("USB") 3.0 computer connectors.  Rather than litigating the merits of the patent disputes in China, Plaintiff has come to the United States to allege that the China patent lawsuits violate commitments made by an unidentified Foxconn or Hon Hai company to a standards setting organization ("SSO"), the USB Implementer's Forum ("USB-IF").  Plaintiff asserts antitrust, contract and tort claims under U.S. federal and New York state law.

The Complaint should be dismissed.  Plaintiff fails to allege facts that, if true, would establish that:

1. Defendants have breached any obligation to the USB-IF;

2. the China lawsuits have damaged the competitive process or caused Plaintiff "antitrust injury;"

3. Defendants conspired or are legally capable of conspiring to commit an antitrust violation;

4. Defendants have a "dangerous probability" of achieving monopoly power;

---

[1] Two other Defendants named in the Complaint, Foxconn International Holdings Ltd. ("Foxconn International CI") and Foxconn (Kunshan) Computer Connector Co., Ltd. ("Foxconn (Kunshan)"), have not been served to date and therefore are not moving to dismiss at this time.

5.      there is a cause of action for "waiver" or legally cognizable claim of promissory estoppel, given that the obligations Plaintiff claims were breached are described in a written contract attached to the Complaint; or

6.      the China patent lawsuits underlying Plaintiff's claims have a sufficient nexus to U.S. commerce to permit application of U.S. antitrust law or New York tort law.

Plaintiff's arguments regarding the propriety of the China patent lawsuits should be raised and decided by the Chinese court that has the lawsuits pending before it.  Plaintiff's attempt to create a "two-front war" should be denied, and its Complaint dismissed.  All of the claims asserted in the Complaint are legally invalid or unsupported by plausible factual allegations.

## II.     **BACKGROUND**

Lotes manufactures USB 3.0 connector products in China.  (Compl. ¶¶ 11, 34).  USB connectors allow computer peripherals, such as digital cameras, keyboards, hard drives and other devices, to connect to personal computers.  There are several generations of these connectors.  (Compl. ¶ 11).  The latest generation of connector is called USB 3.0.  The design specification underlying this connector is at issue in this action.

Lotes alleges that certain of the Defendants also manufacture and sell USB 3.0 connector products in China, and that the other Defendants either purchase USB 3.0 connector products or incorporate such products into products manufactured outside the United States.  (Compl. ¶¶ 18-20).  No party is alleged to manufacture or directly sell any USB 3.0 connector products in the United States.

On July 9, 2012, Defendant Foxconn (Kunshan), a Chinese company that has not been served with the Complaint, filed two lawsuits in China alleging that Plaintiff Lotes, a Taiwanese

company, was infringing Foxconn (Kunshan)'s Chinese patents.  (Compl. ¶ 33).  Lotes

responded by filing the instant lawsuit against five related entities, which Plaintiff refers to

collectively as "Foxconn."  Lotes seeks treble damages, punitive damages and various equitable

relief, claiming Foxconn (Kunshan)'s assertion of its Chinese patents in the two lawsuits in

China violated U.S. antitrust, tort and contract law.

Plaintiff's claims are predicated on its allegation that the Foxconn (Kunshan) patent

lawsuits violate the terms of a "Contributors Agreement" with a SSO, USB-IF.  (Compl. ¶ 31).

Plaintiff attaches its own Contributors Agreement as Exhibit A to the Complaint and alleges that

Defendants executed a Contributors Agreement with the same terms.  (Compl. ¶ 24).  The

Contributors Agreement requires "Contributors" to provide royalty-free licenses to certain patent

claims (not entire patents) in certain limited and defined circumstances.  (Contributors

Agreement § 3.4; Compl. ¶ 24).

A Contributor is obliged to provide royalty free licenses (a) only to companies that have

signed an "Adopters Agreement"[2] within the "Adoption Period" (as those terms are specifically

defined in the agreement), (b) only for the *claims* in patents that are "necessary" to practice the

USB 3.0 connector standard in the sense that there is "no commercially reasonable non-

infringing alternative for implementing" the standard, and (c) only for technology that was

"contributed" to the USB-IF by the Contributor.  (*Id.*  §§ 1.1, 1.2, 1.8, and 3.4).  Plaintiff does

not allege anywhere in the Complaint that the specific patent claims asserted in the Foxconn

(Kunshan) lawsuit in China are "necessary" within the meaning of the Contributors Agreement,

that the technology asserted in those claims was "contributed" to the USB-IF by any of the

Defendants, or that Plaintiff signed an "Adopters Agreement" within the "Adoption Period."

---

[2] "Promoters" are also entitled to a royalty-free patent license, but Plaintiff makes no assertion
that it is a Promoter.

Plaintiff alleges that the Foxconn (Kunshan) China lawsuits have caused it the following injuries: having to litigate the patent lawsuits filed by Foxconn (Kunshan) in China; having to file the instant lawsuit; and alleged difficulties selling its USB 3.0 connector products because of its customers' concerns about Plaintiff's legal right to make, use or sell the specific products it has designed.  (Compl. ¶¶ 77, 87).  Plaintiff does not identify any other competitors that have allegedly suffered similar injuries, or any that have been excluded from competition by any action of any of the Defendants.

Plaintiff alleges that the relevant market is the "market for USB 3.0 products," (Compl. ¶ 41), but it does not allege any of the purported market shares of any (or all) of the Defendants in such markets.  The Complaint does allege, however, that there are other competitors in that alleged market (Compl. ¶¶ 32, 43), but it does not identify those competitors or their purported market shares.

## III.   <u>LEGAL STANDARD</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."  *Id.*  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.*  Although a court must accept as true all factual allegations, it need not credit conclusions couched as factual allegations.  *See Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010).  Dismissal is appropriate when the facts do not allow the court to infer more than the mere possibility of misconduct.  *Id.* The court's gatekeeper role is particularly important in antitrust cases.  *See Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 558 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 n.4 (2d Cir. 2007) ("proceeding to antitrust discovery can be expensive").

## IV.    ARGUMENT

### A.    Breach of the Contributors Agreement Cannot Plausibly Be Inferred from the Facts Alleged in the Complaint.

Each of Plaintiff's claims depends on its assertion that Defendants have breached their Contributors Agreement with the USB-IF.  In particular, Plaintiff argues that the Contributors Agreement entitles Lotes to a royalty-free license (referred to as a fair, reasonable and non-discriminatory or "RAND-Zero" royalty) from Defendants to certain unidentified patents.  It then asserts that all of the Defendants collectively have committed a contractual breach, an antitrust violation and tortious interference with contract because one of the unserved Defendants, Foxconn (Kunshan), sued Lotes in China for infringing two Chinese patents relating to USB 3.0 technology.

However, Plaintiff has not alleged facts to show that (a) it is entitled to such a "RAND-Zero" license or (b) Defendants have violated the "RAND-Zero" license term of the Contributors Agreement.  Under the terms of the Contributors Agreement,  the RAND-Zero licensing requirement only applies (1) to "Necessary Claims" of a patent or patent application (not to entire patents), that are (2) owned by a Contributor or its affiliates, and were "Contributed" to the USB-IF standard by the Contributor, and are licensed to (3) an "Adopter" or "Promoter."[3] (Contributors Agreement § 3.4; Compl. ¶ 24).  The Complaint fails to allege facts establishing any of these three essential elements, thereby requiring dismissal of the Complaint in its entirety.

---

[3] The Contributors Agreement requires any "Contributor" to provide any "Promoter or Adopter... a non-exclusive, worldwide license under any Necessary Claim of a patent or patent application reading on [any] Contributions" made by the patentee (i.e., the "Contributor") on RAND-Zero terms.  (Contributors Agreement § 3.4).

First, Plaintiff has not alleged facts to establish that it is an "Adopter" and thus a prospective third-party beneficiary of the RAND-Zero licensing term of the Contributors Agreement alleged between Defendants and the USB-IF.  The Complaint alleges the conclusion that Plaintiff is an "Adopter," but alleges no facts to plausibly suggest that this is so.  (Compl. ¶ 25).  The Contributors Agreement defines "Adopter" as "any entity that has executed a copy of the USB 3.0 Adopters Agreement within the Adoption Period and delivered it to the Secretary." (Contributors Agreement § 1.1).  Plaintiff does not allege either that it signed an "Adopters Agreement" or that it did so within the "Adoption Period" and delivered it to the USB-IF Secretary.

Second, Plaintiff has not alleged that the claims asserted by Foxconn (Kunshan) in the China patent suits are "Necessary Claims" of a patent.  The Contributors Agreement defines "Necessary Claims" to mean "claims of a patent or patent application that . . . it is not possible to avoid infringing [while implementing the standard] because there is no commercially reasonable non-infringing alternative for implementing such portions of the Final Specification within the bounds of the Scope."  (Contributors Agreement § 1.8).  The Contributors Agreement makes clear that only "Necessary Claims" of a Contributor's "Contribution" need to be licensed on RAND-Zero terms; and that the obligation does not extend to any other patent claims "even if contained in the same patent or patent application as the Necessary Claims."  (*Id*.).

Plaintiff alleges that the patents asserted in China by Foxconn (Kunshan) "read on the USB 3.0 standard" (Compl. ¶ 33), but it does not allege that the specific *claims* asserted in those lawsuits in China are "Necessary Claims" as defined in the Contributors Agreement.  There is no allegation whatsoever about which claims are asserted in the China infringement suits, that any particular asserted patent claims are "necessarily infringed by implementing the Final

Specification" of the USB 3.0 standard, or that there is "no commercially reasonable non-infringing alternative" to implement the Final Specification.

Third, there are no allegations in the Complaint that the patent claims asserted by Foxconn (Kunshan) in the China lawsuits were "Contributions" of any of the Defendants to the USB-IF. The Contributors Agreement defines "Contributions" as "submissions proposing additions to or manufacture of the Draft Specification." (Contributors Agreement § 1.4).

Plaintiff's failure to allege any of these three essential facts establishing that there has been a breach of the Contributors Agreement requires dismissal of its Complaint.

### B.    Plaintiff Has Not Suffered Antitrust Injury.

In order to have standing to pursue antitrust claims (Sixth and Seventh Counts), Plaintiff must have suffered "antitrust injuries" – i.e., injuries "of the type the antitrust laws were intended to prevent and that flows from that which makes defendant's acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). It is not enough that Plaintiff may have suffered some harm. Its alleged injuries must result from a harm to the "competitive process." *Id.*; *see also*, *NYNEX Corp. v. Discon*, 525 U.S. 128, 135 (1998) ("plaintiff . . . must allege and prove harm not just to a single competitor, but to the competitive process, *i.e.*, to competition itself.")

Plaintiff alleges the following purported injuries and argues that they are "antitrust injuries" entitling it to prosecute antitrust claims: (1) filing this lawsuit, (2) an "imminent threat [that its factories in China will be] prohibited from making" USB 3.0 connectors, and (3) "defending itself abroad." (Compl. ¶¶ 77, 87). None of these are antitrust injuries.

The cost associated with "filing this lawsuit" obviously and logically cannot constitute an antitrust injury to Plaintiff. The "antitrust injury" requirement would be entirely meaningless if

it did.  Every Plaintiff who files an antitrust claim by definition incurs the costs of prosecuting its own lawsuit.  If Plaintiff's theory were correct, every plaintiff would by definition have suffered "antitrust injury."

Neither do the other alleged injuries constitute antitrust injuries.  First, the costs of defending the China lawsuits and the potential (although unrealized and speculative) cost of an injunction issued from the court in China are "injuries" to Lotes alone.  Beyond the vague and unsupported allegation that "Hon Hai and Foxconn have refused to license on RAND-Zero terms other manufacturers of USB 3.0 connectors and have sent out warning letters threatening these manufacturers with patent litigation," (Compl. ¶ 32), there are no allegations of "injuries" to other competitors or to competition generally.  It is axiomatic that the antitrust laws "were enacted to protect competition, not competitors," and an injury to Lotes individually cannot support an antitrust claim absent an injury to competition generally.  *See Pueblo Bowl-O-Mat*, 429 U.S. at 488.

Second, Lotes's purported "injuries" flow from the exercise of Foxconn (Kunshan)'s patent rights.  The legal right to exclude is the essence of a patent grant, and thus the exercise of patent rights generally will not provide a basis for an antitrust claim – or create "antitrust injuries":

> Unless and until the patent is shown to have been procured by fraud, … or a suit for its enforcement is shown to be objectively baseless, there is no injury to the market cognizable under existing antitrust law, as long as competition is restrained only within the scope of the patent.

*In re Tamoxifen Antitrust Litig.*, 466 F.3d 187, 213 (2d Cir. 2006) (quoting *In re:Ciprofloxacin Hydrochloride Antitrust Litig.*, 363 F. Supp. 2d 514, 535 (E.D.N.Y. 2005)).  The exercise of valid patents to exclude competition is not "exclusionary conduct" within the meaning of the antitrust laws.  Patent litigation is a legally sanctioned part of the competitive process; not a subversion of that process.  Any injuries that result from the exercise of patent rights, therefore,

are – by definition – not antitrust injuries.  Any exclusion resulting from the exercise of patent rights is legally protected exclusion.

Plaintiff's allegations that Defendants "deceived" the USB-IF do not change the analysis. The D.C. Circuit considered this issue in great detail in its opinion in *Rambus, Inc. v. FTC*, 522 F.3d 456 (D.C. Cir. 2008).  It held that alleged "deception" before a SSO will only constitute an antitrust violation if it creates monopoly power where that power would not otherwise exist.  It is not enough that an alleged breach of a pricing obligation may produce higher prices (or licensing fees) than would otherwise prevail.  *Id*. at 464-65 (citing and discussing *NYNEX*, 525 U.S. at 131-32).

The *Rambus* case involved allegations that Rambus, a technology company with a significant patent portfolio relating to DRAM products, deceived a SSO by failing to disclose patents and patent applications containing claims essential to practicing a standard for DRAM that Rambus helped develop.  *Id.* at 459.  The Federal Trade Commission ("FTC") brought an antitrust lawsuit challenging Rambus's alleged "deception," contending that Rambus's control over the patents essential to practicing the DRAM standard allowed it to monopolize the market for DRAM products and drive up the price of those products.  *Id.*  The FTC argued that Rambus's failure to disclose its patents to the SSO members violated the bylaws of the SSO at issue, and that this breach harmed competition in two ways: first, by increasing prices to consumers; and second, by leading the SSO to adopt a different standard than it would have adopted had Rambus's deception not occurred.  *Id.*

The D.C. Circuit rejected the FTC's claims.  After concluding that the FTC's allegations that the SSO would have adopted a different standard were factually unsupported, the court held that the FTC's claims that the alleged deception led to higher prices and monopoly power by

Rambus in the downstream market for DRAM products were insufficient to provide a basis for an antitrust violation.  *Id.* at 465-67.  Rambus's market power in downstream markets derived from its patent rights, a legally sanctioned and valid basis for excluding competitors.  Because the FTC could not establish that a different standard excluding Rambus's patents would have issued absent the alleged deception, it could not establish that any monopoly power was created by the alleged deception.  It did not matter for antitrust purposes whether another patentee in Rambus's position would have charged lower prices, or if prices in general would have been lower absent the deception by Rambus.  *Id.*

Unless the conduct at issue created monopoly power that would not otherwise exist – and thus damaged the competitive process – no antitrust violation could be found.  *Id.*  Therefore, while explicitly noting that it was not deciding that such allegations or proof would be *sufficient* to establish an antitrust violation, the D.C. Circuit held that at a minimum "an antitrust plaintiff must establish that the SSO would not have adopted the standard in question but for the misrepresentation or omission."  *Id.* at 466.

Although the facts of *Rambus* did not require the D.C. Circuit to address the issue, the logic of the court's holding suggests – consistent with *NYNEX* and other well-established antitrust precedent – that no antitrust claim will lie unless, absent the alleged "deception," the SSO would have adopted a standard that incorporated *no patented technology*.  As long as some patented technology was necessarily included in the standard, another patentee would have exactly the same rights – and exactly the same market power – that Plaintiff alleges Defendants have in this case with regard to USB 3.0 connectors.  The conduct at issue would not create *new* market power, it would only create conditions allowing the exercise of that market power to raise prices.  *See NYNEX*, 525 U.S. at 136 (claims that a lawful monopolist deceived a public authority

to maintain its monopoly and raise prices did not support an antitrust claim); *see also Brunswick Corp. v. Riegel Textile Corp.*, 752 F.2d 261, 265-66 (7th Cir. 1984) (no antitrust claim based on allegations that deceit allowed company to misappropriate rights to valid patent).  The logic of these decisions suggests that there can be no antitrust claim based on deception before a SSO unless the facts indicate the SSO would have adopted a standard incorporating no patented technology.

Plaintiff's allegations here fail to meet either standard identified by the D.C. Circuit in *Rambus*.  Plaintiff alleges no facts to support its conclusory allegation that the USB-IF would have adopted a different standard had it known that Foxconn (Kunshan) would file patent lawsuits against Lotes in China.  ( *See* Compl. ¶¶ 73, 82).  Aside from the fact that Plaintiff has not alleged facts establishing that the patent claims at issue in the China lawsuits are "Necessary Claims" in the meaning of the Contributors Agreement, there are no allegations that there is alternative technology that could have been incorporated by the USB-IF to accomplish the same functions as that covered by the Foxconn (Kunshan) patents at issue in China, or that any such alternatives were considered by the USB-IF.  And there certainly is no allegation that the USB-IF could have adopted a standard that did not rely on any patented technology at all.

In the end, Plaintiff's complaint is that it may have to pay more than nothing for intellectual property rights.  That is not enough to state an antitrust claim or to establish antitrust injuries.

### C.     The China Lawsuits Are Protected by the Noerr-Pennington Doctrine.

Attempts to influence government action by filing lawsuits are immunized from antitrust challenge under the Noerr Pennington Doctrine (the "Doctrine").  *See, e.g.*, *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc. ( "PRE" ),* 508 U.S. 49 (1993).  The Doctrine

likewise applies to tortious interference claims.  *See Bath Petroleum Storage, Inc. v. Market Hub Partners,* No. 00-7302, 2000 U.S. App. LEXIS 25440, at *3(2d. Cir. Oct. 11, 2000) (applying Noerr-Pennington immunity to tortious interference claims).  Patent lawsuits, and related prelitigation negotiations, can only provide a basis for an antitrust lawsuit if they are (a) "objectively baseless" and (b) brought with the subjective intent to use the process – rather than the result of the litigation – to harm competition.  *See, e.g., Honeywell Int'l v. Universal Avionics Sys.*, 488 F.3d 982, 1000 (Fed. Cir. 2007); *PRE*, 508 U.S. at 62.  A suit is "objectively baseless" only when "no reasonable litigant could realistically expect to secure favorable relief." *Honeywell*, 488 F.3d at 1001.

Plaintiff does not allege that the China lawsuits are objectively baseless or brought for the purpose of using the legal process, rather than the result of that process, to harm competition. Plaintiff argues without any factual support alleged, that the patent enforcement actions were brought by Foxconn (Kunshan) in bad faith and for malicious purposes because Defendants should have known that the patents at issue have claims that "read directly" on the USB 3.0 connector standard.  (Compl. ¶ 34).  Plaintiff's allegations are not valid because, as explained above, Defendants are not obligated under the Contributors Agreement to license their patents simply because they "read directly" on the USB 3.0 connector standard.  (*see supra* at 6-7, discussing contractual requirement).

It contends that the patent lawsuits violated the USB-IF Contributors Agreement; but, as noted above in section IV.A., the Complaint's allegations fail to make out three essential elements of a plausible claim of a breach, much less that breach of the Contributors Agreement is so obvious that Foxconn (Kunshan)'s patent lawsuits objectively lack any merit.

**D.**     **There Is No "Agreement" or "Conspiracy" Validly Pled to Support the Antitrust Claims.**

The Sixth and Seventh Counts of the Complaint allege a "conspiracy" among Defendants to violate, respectively, Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2.  "Agreement" among independent economic entities is a necessary predicate of both claims.  *See, e.g.*, *Primetime 24 Joint Venture v. Nat'l Broad. Co.*, 219 F.3d 92, 103 (2d Cir. 2000) (Section 1 claims); *Elecs. Commc'ns Corp. v. Toshiba Am. Consumer Prods., Inc.*, 129 F.3d 240, 246 (2d Cir. 1997) (Section 2 conspiracy to monopolize).  Only after an agreement is established will a court consider whether the agreement constituted an unreasonable restraint of trade.  *See Capital Imaging Assocs. v. Mohawk Valley Med. Assocs., Inc.*, 996 F.2d 537, 542 (2d Cir. 1993).

Plaintiff's antitrust conspiracy claims fail for two independent reasons.  First, Defendants are all part of the same corporate family and are, therefore, legally incapable of "conspiring" to violate the antitrust laws.  *See Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984) (corporation legally incapable of conspiring with its subsidiaries to commit a Section 1 violation); *see also Energex Lighting Indus., Inc. v. North Am. Philips Lighting Corp.*, 656 F. Supp. 914, 920 (S.D.N.Y. 1986) (*Copperweld* principle applies to conspiracies to monopolize).  Because Plaintiff has not alleged that Defendants are independent economic entities lacking a unity of purpose, under *Copperweld*, they cannot conspire with each other for the purposes of forming an antitrust conspiracy.

Second, even assuming Defendants could "conspire" with one another, Plaintiff must allege in more than conclusory terms the metes and bounds of the alleged conspiracy, and the role played by each Defendant in that conspiracy.  *See Beyer Farms v. Elmhurst Dairy Co.*, 142 F. Supp. 2d 296, 300-01 (E.D.N.Y. 2001) (to state a claim for an antitrust conspiracy, Plaintiff must do more than make a bare-bones allegation of conspiracy).  Plaintiff's conclusory

allegations that "the antitrust acts of Hon Hai were aided and abetted in a conspiracy with the knowing cooperation of Foxconn International CI, Foxconn Electronics, Foxconn International USA and Foxconn Kunshan, (collectively, "Foxconn")" (Compl. ¶ 7), and that "Defendants conspired to have Foxconn Kunshan initiate patent enforcement proceedings in China against Lotes" (Compl. ¶ 33), do not state any facts from which one can infer that an agreement existed between Hon Hai and the Foxconn entities to commit an unlawful act.  *See La Flamme v. Societe Air France*, 702 F. Supp. 2d 136, 148 (E.D.N.Y. 2010) (granting motion to dismiss because plaintiffs failed to allege any specific facts providing any basis to infer an actual agreement by defendants to implement an unlawful agreement).

It is entirely unclear from the Complaint's allegations which Defendant entities committed which acts in purported furtherance of the alleged conspiracy.  Pleading standards require the Complaint to allege sufficient facts to establish each party's direct and independent participation in the alleged conspiracy.  *See Precision Associates, Inc. v. Panalpina World Trans.*, No. 08-cv-42(JG)(VVP), 2011 WL 7053807, at *15 (E.D.N.Y. Jan. 4, 2011) (insufficient facts alleged to support inference that all corporate defendants joined conspiracy); *Mitchael v. Intracorp., Inc.*, 179 F.3d 847, 857 (10th Cir. 1999) (explaining that in order to link related corporate entities to a Sherman Act conspiracy, plaintiffs must allege something beyond corporate affiliation, such as evidence that both were involved in the alleged conspiracy).  Each of these pleading failings is sufficient to justify dismissal of Plaintiff's antitrust claims.

E. **Plaintiff Alleges No Facts That Would Plausibly Suggest a "Dangerous Probability" That Any Defendant Will Acquire Monopoly Power.**

To state an attempted monopolization claim, a plaintiff must allege (1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power.  *See Spectrum Sports, Inc. v.*

-14-

*McQuillan*, 506 U.S. 447, 456 (1993).  As demonstrated in sections IV.B and IV.D *supra*,

Plaintiff fails to allege that Defendants engaged in any "predatory or anti-competitive conduct."

*See Hon Hai Precision Industry Co. v. Molex, Inc.*, No. 08-c-5582, 2009 WL 310890, at *2

(N.D. Ill. Feb. 9, 2009) (dismissing attempted monopolization claim because, while defendant's

"conduct may have been a breach of an agreement with [the standards setting organization] or a

breach of the License Agreement [with the plaintiff], it does not constitute predatory or

anticompetitive conduct.").  Plaintiff also fails to allege facts plausibly suggesting that there is a

"dangerous probability" that any Defendant will achieve monopoly power.  This independently

requires dismissal of Plaintiff's attempted monopolization claim (Seventh Count).

       To meet its burden of pleading a "dangerous probability of monopolization," a plaintiff

must allege both the relevant market and the defendant's ability to lessen or destroy competition

in that market.  *See Spectrum*, 506 U.S. at 456.  Market share analysis is an essential part of

determining whether market power exists or is threatened.  *See Int'l Distrib. Ctrs., Inc. v. Walsh

Trucking*, 812 F.2d 786, 792 (2d Cir. 1987).  A court must also consider other factors such as

strength of competition, industry trends, barriers to entry, nature of anticompetitive conduct, and

elasticity of consumer demand in assessing whether the defendant has a dangerous probability of

achieving monopoly power.  *Id*.

       Plaintiff here alleges that the relevant market is the market for USB 3.0 connectors sold

in the United States.  (Compl. at ¶ 41).  However, Plaintiff fails to plead any specific facts at all

on sales or market share of any Defendant – or any other company – in that purported market,

much less facts that would establish monopoly power or a dangerous probability of any

Defendant's achieving monopoly power in that market.  Plaintiff argues that Defendant's patents

are a barrier to entry in the market, but it identifies no companies other than itself allegedly

prevented from competing by those patents.  The Complaint alleges there are other companies making USB 3.0 products, but it alleges no facts to suggest those companies are unable to prevent the exercise of market power by Defendants.  Without allegations here of any Defendant's market share or market power or other allegations regarding the structure of that purported market, Plaintiff's attempted monopolization claim must fail.  *See Bayer Schering Pharma AG v. Bayer Healthcare*, 813 F. Supp. 2d 569, 578-79 (S.D.N.Y. 2011) (conclusory and speculative information on sales or market share do not establish a dangerous probability of achieving monopoly power); *Syncsort Inc. v. Sequential Software, Inc.*, 50 F. Supp. 2d 318, 330 (D.N.J. 1999) (conclusory allegations of "control" and that defendant can command a high price for an inferior product are insufficient to allege a dangerous probability of achieving monopoly power).

### F.    U.S. Antitrust and Tort Law Does Not Reach the Conduct Plaintiff Alleges.

Plaintiff's allegations do not give rise to any Sherman Act claims (Sixth and Seventh Counts) because Plaintiff fails to show that the conduct Plaintiff claims has harmed it – primarily the China lawsuits – has a "direct effect" on U.S. commerce as required by the Foreign Trade Antitrust Improvements Act, 15 U.S.C. § 6a ("FTAIA").  Likewise, Plaintiff's claims that Defendants "tortiously interfered" with contracts that Lotes has with customers in Asia (Fourth Count) lack sufficient nexus to New York for its law to apply.

#### 1.    *Plaintiff's Sherman Act Claims Are Barred by the FTAIA.*

The FTAIA limits the reach of the United States antitrust laws to claims involving (1) purely domestic commerce, (2) import commerce, or (3) conduct that has a "direct, substantial and reasonably foreseeable" effect on U.S. commerce that "gives rise" to a Sherman Act claim. *See* 15 U.S.C. § 6a.  Plaintiff here alleges that the patent lawsuits in China threaten to shutter its

China manufacturing operations, which may affect sales of USB 3.0 connectors in Asia, to companies that incorporate those connectors into products ultimately sold in the United States. (Compl. ¶ 37). Those alleged "connections" to the United States are insufficient to meet any FTAIA standards.

There is a direct effect under the FTAIA if the effect "follows as an immediate consequence of the Defendant's activity" with no "intervening developments." *See United States v. LSL Biotech.*, 379 F.3d 672, 680 (9th Cir. 2004). Courts have found that alleged domestic effects are not direct when they are "premised on a multitude of speculative and changing factors affecting business and investment decisions." *See In re Intel Corp. Microprocessor Antitrust Litig.*, 452 F. Supp. 2d 555, 561 (D. Del. 2006); *Boyd v. AWB Limited*, 544 F. Supp. 2d 236, 243-45 (S.D.N.Y. 2008) (dismissing Sherman Act claims because a myriad of other factors wholly unrelated to the alleged conspiracy, including foreign and domestic market conditions, transportation costs and other factors affecting global supply and demand, could also impact domestic wheat prices).

In *Intel*, the plaintiff AMD sought relief for alleged anticompetitive conduct by Intel that affected the sale of AMD's microprocessors in foreign countries. AMD contended that Intel's conduct directed at sales of microprocessors outside the United States led to higher PC prices and a loss of consumer choice for computer purchasers in the United States. *See Intel*, 452 F. Supp. 2d at 561. The court concluded that these effects were too attenuated to establish the type of "direct effect" on U.S. commerce required by the FTAIA. *Id.* The court explained that these were not direct effects, but rather secondary and indirect effects because (1) they were the by-products of numerous factors relevant to market conditions; and (2) the allegations referred to

harm in the computer market and not the microprocessor market, which was the relevant market. *Id*.

Like the plaintiff in *Intel*, Plaintiff here relies on foreign conduct, which did not have a direct effect in the United States, as the basis of its claims.  Plaintiff's alleged injuries are alleged to arise from patent lawsuits filed in China, asserting China patent rights that govern only the right to make, use or sell the patented technology *in China* relating to USB connectors  (Compl. ¶ 33).  Plaintiff complains that the China lawsuits and publicity surrounding Defendants' patent rights have affected Plaintiff's business and contractual relationships in Asia.  (*Id.* ¶ 39). Plaintiff tries desperately to connect this foreign conduct and effects to the United States through a long and convoluted series of transactions and manufacturing steps:  Plaintiff and other USB 3.0 connector manufacturers supply the USB 3.0 connector products to various manufacturers of motherboards in China, which incorporate the connectors into their motherboards *in China*. These motherboards are sold to original design manufacturers ("ODM") *in China* that manufacture the finished goods for brands such as Dell and HP *in China*.  Only then are these finished goods shipped to the United States for distribution.  (Compl. ¶ 37).

Thus, the harm alleged by Plaintiff occurred abroad and there is no direct effect that would give rise to Sherman Act claims under the FTAIA.  The direct effects on the purported USB 3.0 connector market in the United States are all alleged to occur in Asia.  Any downstream effects on computer prices in the United States are indirect, mandating dismissal of Plaintiff's Sherman Act claims.  *See Intel*, 452 F. Supp. 2d at 561 (finding no direct effect because the effects to which Plaintiff refers are not linked to the relevant market).

## 2. *New York Tortious Interference Law Does Not Apply Extraterritorially.*

The same considerations require dismissal of Plaintiff's tortious interference claims (Fourth Count).  There is a general presumption in New York "against the extra-territorial operation of New York law."  *See Global Reinsurance Corp. v. Equitas Ltd.*, 18 N.Y.3d 722, 735 (N.Y. 2012) (New York antitrust law did not apply to conduct that occurred in Great Britain); *Labor Union of Pico Korea Ltd. v. Pico Prods., Inc.*, 968 F.2d 191, 195 (2d Cir. 1992) (limiting the territorial application of the federal labor law and related tortious interference suit when plaintiffs were foreign employees working for a foreign company).

Courts have declined to apply New York law when the conduct of the parties and injuries allegedly suffered took place outside New York.  *See Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 337-38 (2d Cir. 2005) (finding that contacts with New York were virtually nonexistent where all the negotiations and other activities related to the transaction took place in Thailand, Hong Kong, or Tokyo).  Plaintiff's tortious interference claims should be dismissed because they are based on Plaintiff's contracts with its customers in China and patent infringement lawsuits brought in China.  (Compl. ¶¶ 63-64).  Although Plaintiff alleges that the United States is the relevant market, it fails to show any direct harmful effects in the United States as a result of the conduct that it alleges occurred in China.

## G.   Plaintiff's Promissory Estoppel (Second Count) And Waiver (Third Count) Claims Are Facially Invalid.

Plaintiff's promissory estoppel and waiver claims are facially invalid.  Under New York law, relief under promissory estoppel is unavailable where an express contract covers the subject matter.  *See Karmilowicz v. Hartford Fin. Servs.*, No. 11-3284-cv, 2012 WL 3734449, at *4 (2d Cir. Aug. 30, 2012).  Because the purported "RAND-Zero" obligation underlying Plaintiff's

claims arises from the written Contributors Agreement, that written agreement governs Defendants' contractual obligations and Plaintiff cannot rely on a promissory estoppel theory.

Plaintiff's waiver claim should be dismissed because waiver is not a cause of action under New York law.  *See Ixe Banco v. MBNA Am. Bank, N.A.*, No. 07-civ-0432(LAP), 2008 WL 650403, at *9 n.5 (S.D.N.Y. Mar. 7, 2008) (dismissing waiver cause of action); *Franklin v. BAC Home Loans Servicing*, No. 3:10-cv-1174-M, 2012 WL 2679496, at *11-12 (N.D.Tex. June 6, 2012) (dismissing waiver claim and stating that waiver does not create liability).  "Waiver is not a cause of action because it cannot create liability in and of itself, and a cause of action cannot be based on a waiver."  *See* 18 Am. Jur. 2d, *Estoppel and Waiver* § 183 (2012).

### H.   The Court Should Defer Plaintiff's Declaratory Judgment Claim to Courts in China.

Plaintiff's declaratory judgment claim (Fifth Count) asks the Court to hold that Plaintiff has a right to any Necessary patents under the Contributors Agreement.  Pursuant to 28 U.S.C. § 2201, a federal court "may declare the rights and other legal relations of any interested party in a case of actual controversy within its jurisdiction."  Courts operate under the principle that only a foreign court applying its law can determine infringement of patents granted under the foreign jurisdiction's law.  *See Mars Inc. v. Kabushiki-Kaisa Nippon Conlux*, 24 F.3d 1368 (Fed. Cir. 1994) (declining to hear a Japanese patent infringement claim because there were no similarities to the U.S. patent infringement claim and because the foreign claim involved different acts, different devices and different governing laws); *Ideal Instruments v. Rivard Instruments*, 434 F. Supp. 2d 598, 631 (N.D. Iowa 2006) (declining to exercise jurisdiction over claims for declaratory judgment of noninfringement over Canadian patents).  Because the only Necessary patents at issue here that Plaintiff has identified are Chinese patents, which are governed by Chinese law, and are already the subject of litigation between Plaintiff and one of the unserved

-20-

Defendants in China, the Court should defer to China's courts to determine the infringement issues and dismiss Plaintiff's declaratory judgment claims. Declaratory judgment is not available for the unidentified patents. *See Components, Inc. v. Western Elec. Co.*, 318 F. Supp. 959, 961 (D. Maine 1970) (dismissing declaratory judgment claim for unidentified patents).

## V.     <u>CONCLUSION</u>

For the above reasons, Defendants respectfully request that the Court grant their Motion to Dismiss the Complaint in its entirety for failure to state any claim upon which relief can be granted.

Dated: November 30, 2012

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP
By:/s/ Thomas J. Lang

Brian A. Herman
David A. Snider
101 Park Avenue
New York, N.Y. 10178
(202) 309-6909/6223
(202) 309-6001 (fax)

Thomas J. Lang
J. Clayton Everett, Jr.
Swati V. Rawani
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-5869
(202) 739-5609/5860/5851
(202) 739-3001 (fax)

*Counsel for Hon Hai Precision Industry Co., Ltd., Foxconn International, Inc., and Foxconn Electronics, Inc.*