# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LOTES CO., LTD. ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | **12-cv-7465 (SAS)** |
| ) | |
| ) | **ECF Case** |
| HON HAI PRECISION INDUSTRY CO. LTD.; ) | |
| FOXCONN INTERNATIONAL HOLDINGS, INC.; ) | |
| FOXCONN INTERNATIONAL, INC.; FOXCONN ) | |
| ELECTRONICS, INC.; and FOXCONN (KUNSHAN) ) | |
| COMPUTER CONNECTOR CO., LTD. ) | **ORAL ARGUMENT** |
| ) | **REQUESTED** |
| Defendants. ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, N.Y. 10178
Tel: 202.309.6000

*Counsel for Hon Hai Precision Industry Co., Ltd.,*
*Foxconn International, Inc., and Foxconn Electronics, Inc.*

**TABLE OF CONTENTS**

**Page**

# Contents

I.     INTRODUCTION ....................................................................................................1

II.    BACKGROUND .....................................................................................................3

III.   LEGAL STANDARD ............................................................................................6

IV.   ARGUMENT .........................................................................................................7

      A.    The China Lawsuits Are Protected by the Noerr-Pennington Doctrine. ...............7

      B.    U.S. Antitrust and Tort Law Does Not Reach the Conduct Plaintiff
            Alleges. ...........................................................................................................8

            1.    *Plaintiff's Sherman Act Claims Are Barred by the FTAIA.*.......................8

            2.    *New York Tortious Interference Law Does Not Apply
                 Extraterritorially.* ...............................................................................10

      C.    Plaintiff Has Not Alleged That It Suffered Antitrust Injury................................11

      D.    Defendants Cannot Legally Conspire....................................................................15

      E.    Plaintiff Alleges No Facts That Would Plausibly Suggest a "Dangerous
            Probability" That Any Defendant Will Acquire Monopoly Power.....................18

      F.    Plaintiff's Allegations Do Not Establish That The Contributors Agreement
            Was Breached. ..................................................................................................21

      G.    Plaintiff's Promissory Estoppel Claims Are Improperly Pled ...........................22

      H.    Plaintiff's Waiver Claim Is Facially Invalid. ......................................................23

      I.    Plaintiff's Right To A License For The Claims At Issue In the China
            Lawsuit Should Be Decided By the China Court. ...............................................23

V.    CONCLUSION ....................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*AllGood Entm't, Inc. v. AllGood Concerts,*
    726 F.Supp. 2d 307 (S.D.N.Y. 2010) ................................................................ 11

*Apple Inc. v. Motorola Mobility Inc.,*
    No. 11-cv-178-bbc, 2012 WL 3289835 (W.D. Wis. Aug. 10 2012) ........................................7

*Arcadian Phosphates, Inv. v. Arcadian Corp.,*
    884 F.2d 69 (2d Cir. 1989) ................................................................ 22

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................ 6

*Bath Petroleum Storage, Inc. v. Market Hub Partners,*
    No. 00-7302, 2000 U.S. App. LEXIS 25440 (2d. Cir. Oct. 11, 2000) ....................................7

*Bayer Schering Pharma AG v. Bayer Healthcare,*
    813 F. Supp. 2d 569 (S.D.N.Y. 2011) ................................................................ 20

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ................................................................ 6, 7

*Bell Atl. Bus. Sys Servs. v. Hitachi Data Sys. Corp.,* 849 F. Supp. 702 (N.D. Cal. 1994) ....... 16,17

*Boyd v. AWB Limited,*
    544 F. Supp. 2d 236 (S.D.N.Y. 2008) ................................................................ 9

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
    429 U.S. 477 (1977) ................................................................ 11, 12

*Brunswick Corp. v. Riegel Textile Corp.,*
    752 F.2d 261 (7th Cir. 1984) ................................................................ 15

*Capital Imaging Assocs. v. Mohawk Valley Med. Assocs., Inc.,*
    996 F.2d 537 (2d Cir. 1993) ................................................................ 14

*Components, Inc. v. Western Elec. Co.,*
    318 F. Supp. 959 (D. Maine 1970) ................................................................ 24

*Copperweld Corp. v. Indep. Tube Corp.,*
    467 U.S. 752 (1984) ................................................................ 16

*Direct Media Corp. v. Camden Tel. & Tel.,* 989 F.Supp. 1211 (S.D. Ga. 1997) ....................... 16

*Discon, Inc. v. NYNEX Corp.*,
  93 F.3d 1055 (2d Cir. 1996) ............................................................... 16, 17, 19

*DiVittorio v. Equidyne Extractive Indus.*,
  822 F.2d 1242 (2d Cir. 1987) ............................................................... 6

*Franklin v. BAC Home Loans Servicing*,
  No. 3:10-cv-1174-M, 2012 WL 2679496 (N.D.Tex. June 6, 2012) ...................... 23

*Global Reinsurance Corp. v. Equitas Ltd.*,
  18 N.Y.3d 722 (N.Y. 2012) ............................................................... 10, 11

*Guzowski v. Hartman*, 969 F.2d 211(6th Cir. 1992) .................................. 16

*Hon Hai Precision Industry Co. v. Molex, Inc.*,
  No. 08-c-5582, 2009 WL 310890 (N.D. Ill. Feb. 9, 2009) ........................... 18

*Honeywell Int'l v. Universal Avionics Sys.*,
  488 F.3d 982 (Fed. Cir. 2007) ............................................................... 7

*Ideal Instruments v. Rivard Instruments*,
  434 F. Supp. 2d 598 (N.D. Iowa 2006) .................................................... 24

*In re Elevator Antitrust Litig.*,
  502 F.3d 47 (2d Cir. 2007) ............................................................... 6

*In re Intel Corp. Microprocessor Antitrust Litig.*,
  452 F. Supp. 2d 555 (D. Del. 2006) .................................................... 9, 10

*In re Tamoxifen Antitrust Litig.*,
  466 F.3d 187 (2d Cir. 2006) ............................................................... 12

*Int'l Distrib. Ctrs., Inc. v. Walsh Trucking*,
  812 F.2d 786 (2d Cir. 1987) ............................................................... 19

*Ixe Banco v. MBNA Am. Bank, N.A.*,
  No. 07-civ-0432(LAP), 2008 WL 650403 (S.D.N.Y. Mar. 7, 2008) ................... 23

*Karmilowicz v. Hartford Fin. Servs.*,
  No. 11-3284-cv, 2012 WL 3734449 (2d Cir. Aug. 30, 2012) ............................. 22

*Kramer v. Time Warner Inc.*,
  937 F.2d 767 (2d Cir. 1991) ............................................................... 18

*Luce v. Edelstein*,
  802 F.2d 49 (2d Cir. 1986) ............................................................... 6

*Mars Inc. v. Kabushiki-Kaisa Nippon Conlux,*
     24 F.3d 1368 (Fed. Cir. 1994) ......................................................................24

*Novatel Comm'cns v. Cellular Tel. Supply*, No. Civ. A. No. C85-2674A, 1986 WL 15507
     (N.D. Ga. Dec. 23, 1986)...........................................................................16

*NYNEX Corp. v. Discon,*
     525 U.S. 128 (1998) .......................................................................11, 13, 14, 15

*Primetime 24 Joint Venture v. Nat'l Broad. Co.,*
     219 F.3d 92 (2d Cir. 2000) ......................................................................15, 16

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc. ("PRE"),*
     508 U.S. 49 (1993) ......................................................................................7

*Public Patent Found. v. Quigley Corp.,* No. 10 Civ. 1552 (BSJ)(THK), 2011 WL 3055382
     (S.D.N.Y. July 20, 2011) ...........................................................................18

*R.B. Ventures, Ltd. v. Shane,*
     112 F.3d 54 (2d Cir. 1997) ........................................................................22

*Rambus, Inc. v. FTC,*
     522 F.3d 456 (D.C. Cir. 2008)...............................................................13, 14

*Rosen v. Hyundai Group (Korea),*
     829 F. Supp. 41 (E.D.N.Y 1993) ...............................................................16

*Shaw v. Rolex Watch, U.S.A., Inc.,*
     673 F. Supp. 674 (S.D.N.Y. 1987) ............................................................16

*Spectrum Sports, Inc. v. McQuillan,*
     506 U.S. 447 (1993) ..................................................................................18

*Starr v. Sony BMG Music Entm't,*
     592 F.3d 314 (2d Cir. 2010) .......................................................................6

*United States v. Garland,*
     991 F.2d 328 (6th Cir. 1993) ......................................................................4

*United States v. LSL Biotech.,*
     379 F.3d 672 (9th Cir. 2004) ......................................................................8

*Winstar Commc'ns v. Equity Office Prop.,*
     170 Fed. Appx. 740 (2d Cir. 2006) ...........................................................17

**STATUTES**

15 U.S.C. § 6a .......................................................................................................8

15 U.S.C. § 1 ..................................................................................................... 15

28 U.S.C. § 2201 ............................................................................................... 23

Fed. R. Civ. P. 9(b) ............................................................................................. 6

**OTHER AUTHORITIES**

18 Am. Jur. 2d, *Estoppel and Waiver* § 183 (2012) ...................................... 23

## I.    __INTRODUCTION__

This case is an attempt by Lotes Co. Ltd ("Lotes" or "Plaintiff") – a Taiwanese

manufacturer of Universal Serial Bus ("USB") connectors for electronic peripherals – to gain

leverage in patent litigation pending in the courts in China.  In that parallel Chinese litigation,

Foxconn (Kunshan) Computer Connector Co., Ltd. ("Foxconn Kunshan") (which has not yet

even been served in this action) has accused Lotes of infringing on certain Chinese patents

concerning technology for the third generation of USB connectors, referred to as USB 3.0.

Plaintiff alleges that only two of thirteen USB 3.0 connectors it manufactures are accused of

infringement in the Chinese litigation.

The First Amended Complaint (the "FAC") contains numerous allegations concerning the

Chinese patent litigation and the technology concerning USB connectors.  But the Court need not

address these technical matters at the motion to dismiss stage because, even accepting Plaintiff's

factual allegations as true, the FAC still fails as a matter of law.[1]

*First*, Foxconn Kunshan has a legal right to assert its patent rights.  The assertion of

patent rights through legal proceedings is immunized from antitrust challenge by the *Noerr*

*Pennington* Doctrine, and any market power that derives from such patent assertion is legally

---

[1]    At the December 4, 2012 pre-motion conference, the Court granted leave to Plaintiff to file a
FAC in lieu of opposing the Defendants' Motion to Dismiss filed on November 30, 2012.
Plaintiff filed its FAC on December 21, 2012.  Defendants Hon Hai Precision Industry Co.,
Ltd., Foxconn International, Inc., and Foxconn Electronics, Inc. filed a motion to dismiss on
January 11, 2013 in support of their motion to dismiss the claims brought by Plaintiff in its
FAC.  Two other Defendants named in the original Complaint and the FAC, Foxconn
International Holdings Ltd. ("Foxconn International CI") and Foxconn (Kunshan) Computer
Connector Co., Ltd. ("Foxconn (Kunshan)"), have not been served to date and therefore are
not moving to dismiss at this time. Plaintiff requested a pre-motion conference to contest
certain documents that Defendants attached to the motion to dismiss.  The conference was
held on February 5, 2013 and, pursuant to the Court's instructions, Defendants are
submitting a revised motion to dismiss without attaching or referring to the contested
documents.

protected and cannot support an antitrust claim.  The *Noerr* Doctrine similarly applies to Plaintiff's tortious interference claims.

*Second*, Plaintiff has not alleged a "direct" effect on U.S. commerce sufficient to allow the assertion of U.S. antitrust law or New York tortious interference law to its claims.  The China patent lawsuit and related conduct apply only to the manufacture and sale of certain USB 3.0 products in China and/or to customers purchasing in Asia.

*Third*, Plaintiff has not and cannot plausibly allege that the patent lawsuit in China (the only alleged anticompetitive act by Defendants) will adversely affect competition as a whole in any market.  The China lawsuit involves only one manufacturer of USB 3.0 connectors – Plaintiff, Lotes.  Many other USB 3.0 connector manufacturers have, unlike Lotes, taken licenses to Defendants' patents, as counsel for Plaintiff frankly acknowledged in a letter Plaintiff cites (FAC ¶ 44), but does not attach to the Complaint.  (*See* November 3, 2011 Letter from James M. Chadwick, Ex. A).  And the China lawsuit affects only two of the thirteen USB 3.0 connectors Plaintiff manufactures (FAC ¶ 61), further underlining that the "market" has not been injured in any way.  Plaintiff thus lacks antitrust injury, and its claim that the China lawsuit will permit Defendants to acquire market power over USB 3.0 connector products is untenable.

*Fourth*, Plaintiff's conspiracy claims fail because the Defendants – all close corporate affiliates of one another through common ownership by defendant Hon Hai Precision Industrial Co. Ltd.– are not legally capable of conspiring with one another.

*Fifth*, Plaintiff's breach of contract claim fails because Plaintiff  has not alleged that the specific *claims* currently asserted in the China lawsuits breach the relevant contract at issue (the Contributors Agreement).

-2-

*Sixth,* Plaintiff cannot make out a claim for promissory estoppel because (a) there is a written contract (the Contributors Agreement) that Plaintiff alleges governs the parties' relationship and (b) Plaintiff cannot credibly claim that it detrimentally relied on any promise by Defendants to license *Non-Necessary* patent claims on "reasonable and *non-discriminatory*" (RAND) terms given that it explicitly renounced a desire to take a license to such claims on any terms (*see* Ex. A) and proceeded to manufacture products that infringed these claims without a license, prompting the China lawsuits.

*Finally*, Plaintiff's claim for waiver should be dismissed because there is no cause of action for waiver, and its declaratory judgment claim is improper because the issues on which Plaintiff seeks a declaration are already proceeding before the court in China.

Plaintiff's FAC confirms that Plaintiff has no legally viable claims.  Its attempts to gain leverage in the patent litigation proceeding in China should be rejected, and its Complaint dismissed with prejudice.

## II.   <u>BACKGROUND</u>

USB connectors allow peripherals, such as digital cameras, keyboards, hard drives and other devices, to connect to personal computers, smart phones and other electronic devices (e.g. television).  (FAC ¶¶ 16, 34).  There are several generations of these connectors.  (*Id.* at ¶ 16).  The latest generation of connector is called USB 3.0.  (*Id.*).  The design specification underlying this connector is at issue in this action.

Lotes manufactures USB 3.0 connector products in China.  (*Id.* at ¶¶ 15, 47).  According to the FAC, Lotes currently manufactures and sells thirteen different USB 3.0 connector product lines.  (*Id.* at ¶ 61).  Lotes alleges that certain of the Defendants also manufacture and sell USB 3.0 connector products in China, and that the other Defendants either purchase USB 3.0

connector products or incorporate such products into products manufactured outside the United States.  (*Id.* at ¶¶ 2-6, 22-23, 34).  No party is alleged to manufacture or directly sell any USB 3.0 connector products in the United States.

On July 9, 2012, Foxconn (Kunshan), a Chinese company that has not been served with the Complaint, filed two lawsuits in China alleging that two of the thirteen USB 3.0 connector products manufactured by Plaintiff, a Taiwanese company, infringed two Chinese patents.  (*Id.* at ¶¶ 56-57).  Lotes responded by filing the instant lawsuit against the Defendants, five corporate affiliates.  Lotes seeks treble damages, punitive damages and various equitable relief, claiming Foxconn (Kunshan)'s assertion of its Chinese patents in the two lawsuits in China violated U.S. antitrust, tort and contract law.

Plaintiff's claims in the FAC are predicated on its allegation that the Foxconn (Kunshan) patent lawsuits violate the terms of a "Contributors Agreement" with a standard setting organization ("SSO"), the USB-IF.  (*Id.* at ¶ 49).  The USB-IF is the standard setting organization that developed the technical specifications for USB 3.0 connector products.  The specification identifies certain products attributes that are "Necessary" components of all USB 3.0 connector products.  Other features that may optionally be incorporated into USB 3.0 connector products are "Non-Necessary." The USB-IF Contributors Agreement requires "Contributors" to provide royalty-free licenses to certain patent *claims* (not entire patents) in certain limited and defined circumstances.  (*See* Contributors Agreement § 3.4; FAC ¶ 38).

A Contributor is obliged to provide royalty free licenses only for the *claims* in patents that are "Necessary" to practice the USB 3.0 connector standard in the sense that there is "no commercially reasonable non-infringing alternative for implementing" the standard, and only for technology that was "contributed" to the USB-IF by the Contributor.  (*See* Contributors

-4-

Agreement §§ 1.8 and 3.4).  Except for conclusory statements, Plaintiff does not provide any facts anywhere in the Complaint that support its assertion that the specific patent claims currently asserted in the Foxconn (Kunshan) lawsuits in China are "Necessary" within the meaning of the Contributors Agreement or that there is no commercially reasonable non-infringing alternative for USB 3.0 connector products.  To the contrary, Plaintiff's allegations demonstrate the opposite: Plaintiff alleges that only two of its thirteen USB 3.0 product lines have been affected by the China patent lawsuits.  (FAC ¶ 61).  Thus, by its own admission, Plaintiff can still manufacture and sell eleven different USB 3.0 connectors without concern for the China patent lawsuits.

Plaintiff alleges that the Foxconn (Kunshan) China lawsuits have caused it the following injuries: (1) injury to its business and property, (2) threatened imminent loss of customers and potential customers, and (3) loss of goodwill.  (*Id.* at ¶¶ 111, 118).  Plaintiff does not identify any other competitors that have allegedly suffered similar injuries, or any that have been excluded from competition by any action of any Defendant.  To the contrary, Plaintiff has acknowledged through a letter from its counsel in November, 2011, that Defendants have licensed their USB 3.0 patents to "other USB 3.0 Adopters."  (*See* Ex. A).  In the same letter, Plaintiff made clear that it was "interested in licensing only Hon Hai's Necessary Claims for USB 3.0," rejecting Defendants' offer to also license Plaintiff its Non-Necessary Claims (such as those asserted in the China lawsuits).  (*See id.*)

Plaintiff alleges that the relevant market is the "market for USB 3.0 products" in the United States.  (FAC ¶ 65).  Plaintiff alleges that Foxconn supplies the USB components for 50 percent of all notebooks sold worldwide.  (*Id.* at ¶¶ 21, 35).  But it does not allege any of the purported market shares of Foxconn, Hon Hai or of any (or all) of the Defendants in the United

States, or for all USB 3.0 connector products.  (*Id.* at ¶ 35).  The Complaint does allege,

however, that there are other competitors in that alleged market (*Id.* at ¶¶ 51, 117), but it does not

identify those competitors or their purported market shares.

## III.   <u>LEGAL STANDARD</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *See Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009).  "A pleading that offers labels and conclusions or a formulaic recitation of

the elements of a cause of action will not do." *Id.*  "Nor does a complaint suffice if it tenders

naked assertions devoid of further factual enhancement." *Id.*  Although a court must accept as

true all factual allegations, it need not credit conclusions couched as factual allegations.  *See*

*Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010).  Dismissal is appropriate

when the facts do not allow the court to infer more than the mere possibility of misconduct.  *Id.*

The court's gatekeeper role is particularly important in antitrust cases.  *See Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 558 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 n.4

(2d Cir. 2007) ("proceeding to antitrust discovery can be expensive").

When alleging fraud, the party "must state with particularity the circumstances

constituting fraud."  Fed. R. Civ. P. 9(b).  A complaint alleging fraud against multiple defendants

must state the allegations specifically attributable to each individual defendant.  *See DiVittorio v.*

*Equidyne Extractive Indus.,* 822 F.2d 1242, 1247 (2d Cir. 1987).  Allegations that fail to specify

the time, place, speaker, and content of the alleged misrepresentations, lack the "particulars"

required by Rule 9(b).  *See Luce v. Edelstein,* 802 F.2d 49, 55 (2d Cir. 1986).

IV.   **ARGUMENT**

    A.   **The China Lawsuits Are Protected by the Noerr-Pennington Doctrine.**

Each of Plaintiff's claims depends on its assertion that Defendants breached their obligations under the Contributors Agreement with the USB-IF by filing the two patent lawsuits against Plaintiff in China.  Such attempts to influence government action by filing lawsuits are immunized from antitrust challenge under the Noerr Pennington Doctrine (the "Doctrine").  *See, e.g.*, *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc. ("PRE")*, 508 U.S. 49 (1993); *Apple Inc. v. Motorola Mobility Inc.*, No. 11-cv-178-bbc, 2012 WL 3289835, at *12 (W.D. Wis. Aug. 10 2012) (defendant's attempt to enforce its patents immune from antitrust claim).  The Doctrine likewise applies to tortious interference claims.  *See Bath Petroleum Storage, Inc. v. Market Hub Partners,* No. 00-7302, 2000 U.S. App. LEXIS 25440, at *3 (2d. Cir. Oct. 11, 2000) (applying Noerr-Pennington immunity to tortious interference claims).

Patent lawsuits, and related pre-litigation negotiations, can only provide a basis for an antitrust lawsuit if they are (a) "objectively baseless" and (b) brought with the subjective intent to use the process – rather than the result of the litigation – to harm competition.  *See, e.g., Honeywell Int'l v. Universal Avionics Sys.*, 488 F.3d 982, 1000 (Fed. Cir. 2007); *PRE*, 508 U.S. at 62.  A suit is "objectively baseless" only when "no reasonable litigant could realistically expect to secure favorable relief."  *Honeywell*, 488 F.3d at 1001.  Plaintiff must provide factual support for an allegation that a patent infringement claim is objectively baseless.  *See Apple Inc.*, 2012 WL 3289835, at *12.

Plaintiff does not allege that the China lawsuits are objectively baseless or brought for the purpose of using the legal process, rather than the result of that process, to harm competition.  Plaintiff contends that the patent lawsuits themselves violated the USB-IF Contributors

Agreement; but, as noted below in section IV.F., the Complaint's allegations fail to make out the essential elements of a plausible claim of a breach, much less that breach of the Contributors Agreement is so obvious that Foxconn (Kunshan)'s patent lawsuits objectively lack any merit.

### B.    U.S. Antitrust and Tort Law Does Not Reach the Conduct Plaintiff Alleges.

Plaintiff's allegations do not give rise to any Sherman Act claims (Sixth and Seventh Counts) because Plaintiff fails to show that the conduct Plaintiff claims has harmed it – primarily the China lawsuits – has a "direct effect" on U.S. commerce as required by the Foreign Trade Antitrust Improvements Act, 15 U.S.C. § 6a ("FTAIA").  Likewise, Plaintiff's claims that Defendants "tortiously interfered" with contracts that Lotes claims it has with customers in Asia (Fourth Count) lack sufficient nexus to New York for its law to apply.

### 1.    *Plaintiff's Sherman Act Claims Are Barred by the FTAIA.*

The FTAIA limits the reach of the United States antitrust laws to claims involving (1) purely domestic commerce, (2) import commerce, or (3) conduct that has a "direct, substantial and reasonably foreseeable" effect on U.S. commerce that "gives rise" to a Sherman Act claim. *See* 15 U.S.C. § 6a.  Plaintiff here alleges that the patent lawsuits in China threaten to shutter its China manufacturing operations, which may affect sales of USB 3.0 connectors in Asia to companies that incorporate those connectors into products ultimately sold in the United States. (FAC ¶ 37).  Those alleged ripple effects on markets in the United States (*Id.* at ¶ 67) are insufficient to meet the FTAIA's standards.

There is a direct effect under the FTAIA only if the effect "follows as an immediate consequence of the Defendant's activity" with no "intervening developments."  *See United States v. LSL Biotech.*, 379 F.3d 672, 680 (9th Cir. 2004).  Courts have found that alleged domestic effects are not direct when they are "premised on a multitude of speculative and

changing factors affecting business and investment decisions." *See In re Intel Corp. Microprocessor Antitrust Litig.*, 452 F. Supp. 2d 555, 561 (D. Del. 2006); *Boyd v. AWB Limited*, 544 F. Supp. 2d 236, 243-45 (S.D.N.Y. 2008) (dismissing Sherman Act claims because a myriad of other factors wholly unrelated to the alleged conspiracy, including foreign and domestic market conditions, transportation costs and other factors affecting global supply and demand, could also impact domestic wheat prices).

In *Intel*, the plaintiff AMD sought relief for alleged anticompetitive conduct by Intel that affected the sale of AMD's microprocessors in foreign countries.  AMD contended that Intel's conduct directed at sales of microprocessors outside the United States led to higher PC prices and a loss of consumer choice for computer purchasers in the United States.  *See Intel*, 452 F. Supp. 2d at 561.  The court concluded that these effects were too attenuated to establish the type of "direct effect" on U.S. commerce required by the FTAIA.  *See id*.  The court explained that these were secondary and indirect effects because (1) they were the by-products of numerous factors relevant to market conditions; and (2) the allegations referred to harm in the computer market and not the microprocessor market, which was the relevant market.  *See id*.

Like the plaintiff in *Intel*, Plaintiff here relies on foreign conduct, which did not have a direct effect in the United States, as the basis of its claims.  Plaintiff's alleged injuries are alleged to arise from patent lawsuits filed in China, asserting China patent rights that govern only the right to make, use or sell the patented technology *in China* relating to USB connectors.  (FAC ¶ 53).  Plaintiff complains that the China lawsuits and publicity surrounding Defendants' patent rights have affected Plaintiff's business and contractual relationships in Asia.  (*Id. at* ¶¶ 68, 69).  Plaintiff tries to muddy the waters in an effort to show an effect in the U.S. by stating in the FAC that "[t]he factories that Lotes has built to make USB 3.0 connectors for export to the U.S. are

located in China" (*Id.* at ¶ 47), and that the USB 3.0 connectors named in the patent lawsuits in China "are among the Lotes products shipped for use in the United States market" (*Id.* at ¶ 58), but its allegations make clear that what it is talking about are direct sales of USB 3.0 connectors to "direct purchasers" in Asia, which incorporate those connectors into *other products* "which are shipped to the United States." (*Id.* at ¶ 63).

There is no allegation that any USB 3.0 connector is sold directly in the United States, and certainly Lotes does not allege that it sells USB 3.0 connectors directly in the United States. Despite Plaintiff's desperate attempt to connect foreign conduct and effects to the United States, the fact remains that the alleged conduct, taking Plaintiff's allegations as true, is connected to the United States only through a long and convoluted series of transactions and manufacturing steps: Plaintiff and other USB 3.0 connector manufacturers supply the USB 3.0 connector products to various manufacturers of motherboards in China, which incorporate the connectors into their motherboards *in China*. These motherboards are sold to original design manufacturers ("ODM") *in China* that manufacture the finished goods for brands such as Dell and HP *in China*. (*Id.* at ¶¶ 20-21). Only then are these finished goods shipped to the United States for distribution. (*Id.* at ¶¶ 63). Such "ripple effects" (*Id.* at ¶ 67) on markets in the United States are insufficient to allow application of the Sherman Act under the standards articulated in the FTAIA. *See Intel*, 452 F. Supp. 2d at 561 (finding no direct effect because the effects to which Plaintiff refers are not linked to the relevant market).

### 2. *New York Tortious Interference Law Does Not Apply Extraterritorially.*

The same considerations require dismissal of Plaintiff's tortious interference claims (Fourth Count). There is a general presumption "against the extra-territorial operation of New

York law." *See Global Reinsurance Corp. v. Equitas Ltd.*, 18 N.Y.3d 722, 735 (N.Y. 2012)

(New York antitrust law did not apply to conduct that occurred in Great Britain).

      Courts have declined to apply New York tortious interference law when the conduct of

the parties and injuries allegedly suffered took place outside New York. *See AllGood Entm't,

Inc. v. AllGood Concerts,* 726 F.Supp. 2d 307, 315-16 (S.D.N.Y. 2010). When the underlying

conduct lacks a sufficient nexus to New York – as it does here – New York tortious interference

law will not apply even if a related contract has a choice of law clause specifying application of

New York law. *See id.* at 314 (tort claims are outside the scope of contractual choice-of-law

provisions). Plaintiff's tortious interference claims should be dismissed because they are based

on Plaintiff's contracts with its customers in China and patent infringement lawsuits brought in

China. (FAC ¶¶ 56, 57, 60). Although Plaintiff alleges that the United States is the relevant

market, it fails to show any direct effects in the United States resulting from the alleged conduct

that it alleges occurred in China.

      **C.**     <u>**Plaintiff Has Not Alleged That It Suffered Antitrust Injury.**</u>

      To have standing to pursue antitrust claims (Sixth and Seventh Counts), Plaintiff must

have suffered an "antitrust injury" – *i.e.*, injury "of the type the antitrust laws were intended to

prevent and that flows from that which makes defendant's acts unlawful." *Brunswick Corp. v.

Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). It is not enough that Plaintiff alleges that it

has suffered some harm. Its alleged injuries must result from a harm to the "competitive

process." *Id.*; *see also*, *NYNEX Corp. v. Discon*, 525 U.S. 128, 135 (1998) ("plaintiff . . . must

allege and prove harm not just to a single competitor, but to the competitive process, *i.e.*, to

competition itself.").

Plaintiff alleges the following purported injuries and argues that they are "antitrust injuries": (1) injury to its business and property, (2) threatened by imminent loss of customers and potential customers, and (3) loss of goodwill.  (FAC ¶¶ 111, 118).  None of these are antitrust injuries.

First, the injuries stated by Lotes, assuming for purposes of this motion that they exist, are "injuries" to Lotes alone and not to the market (or competitors) generally.  Beyond the vague and unsupported allegation that "Hon Hai and Foxconn have refused to license on RAND-Zero terms other manufacturers of USB 3.0 connectors and have sent out warning letters threatening these manufacturers with patent litigation," (FAC ¶ 51), there are no allegations of "injuries" to other competitors or to competition generally.  To the contrary, the letter from Lotes' counsel that is cited in the FAC states just the opposite: "Hon Hai has entered into licenses to its USB 3.0 patents with other USB 3.0 Adopters."  (Ex. A).  It is axiomatic that the antitrust laws "were enacted to protect competition, not competitors," and an injury to Lotes individually cannot support an antitrust claim absent an injury to competition generally.  *See Pueblo Bowl-O-Mat*, 429 U.S. at 488.

Second, Lotes' purported "injuries" flow from the exercise of Foxconn (Kunshan)'s patent rights.  The legal right to exclude is the essence of a patent grant, and thus the exercise of patent rights generally will not provide a basis for an antitrust claim – or create "antitrust injuries":

> Unless and until the patent is shown to have been procured by fraud, … or a suit for its enforcement is shown to be objectively baseless, there is no injury to the market cognizable under existing antitrust law, as long as competition is restrained only within the scope of the patent.

*In re Tamoxifen Antitrust Litig.*, 466 F.3d 187, 213 (2d Cir. 2006) (quoting *In re:Ciprofloxacin Hydrochloride Antitrust Litig.*, 363 F. Supp. 2d 514, 535 (E.D.N.Y. 2005)).  The exercise of

valid patents to exclude competition is not "exclusionary conduct" within the meaning of the antitrust laws.  Patent litigation is a legally sanctioned part of the competitive process; not a subversion of that process.  Any injuries that result from the exercise of valid patent rights, therefore, are – by definition – not antitrust injuries.  Any exclusion resulting from the exercise of patent rights is legally protected exclusion.

Plaintiff's allegations that Defendants "deceived" the USB-IF do not change the analysis.  The D.C. Circuit considered this issue in great detail in its opinion in *Rambus, Inc. v. FTC*, 522 F.3d 456 (D.C. Cir. 2008).  It held that alleged "deception" before a SSO only injures competition – and thus forms a predicate for an antitrust violation and antitrust injury – <u>if it creates monopoly power where that power would not otherwise exist</u>.  It is not enough that an alleged breach of a pricing obligation may produce higher prices (or licensing fees) than would otherwise prevail.  *See id.* at 464-65 (citing and discussing *NYNEX*, 525 U.S. at 131-32).

The *Rambus* case involved allegations that Rambus, a technology company with a significant patent portfolio relating to dynamic random access memory ("DRAM") products, deceived a SSO by failing to disclose patents and patent applications containing claims essential to practicing a standard for DRAM that Rambus helped develop.  *See id.* at 459.  The Federal Trade Commission ("FTC") brought an antitrust lawsuit challenging Rambus's alleged "deception," contending that Rambus's control over the patents essential to practicing the DRAM standard allowed it to monopolize the market for DRAM products.  *See id.*  The FTC argued that Rambus's failure to disclose its patents to the SSO members violated the bylaws of the SSO at issue, and that this breach harmed competition in two ways: first, by increasing prices to consumers; and second, by leading the SSO to adopt a different standard than it would have adopted had Rambus's deception not occurred.  *See id.*

-13-

The D.C. Circuit rejected the FTC's claims.  After concluding that the FTC's allegations that the SSO would have adopted a different standard were factually unsupported, the court held that the FTC's claims that the alleged deception led to higher prices and monopoly power by Rambus in the downstream market for DRAM products were insufficient to provide a basis for an antitrust violation.  *See id.* at 465-67.  Rambus's market power in downstream markets derived from its patent rights, a legally sanctioned and valid basis for excluding competitors. Because the FTC could not establish that a different standard excluding Rambus's patents would have issued absent the alleged deception, it could not establish that any monopoly power was created by the alleged deception.  It did not matter for antitrust purposes whether another patentee in Rambus's position would have charged lower prices, or if prices in general would have been lower absent the deception by Rambus.  *See id.*

Unless the conduct at issue created monopoly power that would not otherwise exist – and thus damaged the competitive process – no antitrust violation could be found.  *See id.*  Therefore, while explicitly noting that it was not deciding that such allegations or proof would be *sufficient* to establish an antitrust violation, the D.C. Circuit held that at a minimum "an antitrust plaintiff must establish that the SSO would not have adopted the standard in question but for the misrepresentation or omission."  *Id.* at 466.

Although the facts of *Rambus* did not require the D.C. Circuit to address the issue, the logic of the court's holding suggests – consistent with *NYNEX* and other well-established antitrust precedent – that no antitrust claim will lie unless, absent the alleged "deception," the SSO would have adopted a standard that incorporated *no patented technology*.  As long as some patented technology was necessarily included in the standard, another patentee would have exactly the same rights – and exactly the same market power – that Plaintiff alleges Defendants

-14-

have in this case with regard to USB 3.0 connectors.  The conduct at issue would not create *new* market power; it would only create conditions allowing the exercise of that market power to raise prices.  *See NYNEX*, 525 U.S. at 136 (claims that a lawful monopolist deceived a public authority to maintain its monopoly and raise prices did not support an antitrust claim); *see also Brunswick Corp. v. Riegel Textile Corp.*, 752 F.2d 261, 265-66 (7th Cir. 1984) (no antitrust claim based on allegations that deceit allowed company to misappropriate rights to valid patent).  These decisions reflect that there can be no antitrust claim based on deception before a SSO unless the facts indicate the SSO would have adopted a standard incorporating no patented technology.

Plaintiff's allegations here fail to meet either standard identified by the D.C. Circuit in *Rambus*.  Plaintiff alleges no facts to support its conclusory allegation that the USB-IF would have adopted a different standard had it known that Foxconn (Kunshan) would file patent lawsuits against Lotes in China.  (*See* FAC ¶ 50).  There are also no allegations that there is alternative technology that could have been incorporated by the USB-IF to accomplish the same functions as that covered by the Foxconn (Kunshan) patents at issue in China, or that any such alternatives were considered by the USB-IF.  And there certainly is no allegation that the USB-IF could have adopted a standard that did not rely on any patented technology at all.

In the end, Plaintiff's complaint is that it may have to pay more than zero for intellectual property rights.  That is not enough to state an antitrust claim or to establish antitrust injuries.

## D.  Defendants Cannot Legally Conspire.

The Sixth Count of the Complaint alleges a "conspiracy" among Defendants to violate Section 1 of the Sherman Act, 15 U.S.C. § 1.[2]  "Agreement" among independent economic entities is a necessary predicate of the Section 1 conspiracy claim.  *See, e.g., Primetime 24 Joint*

---

[2] To the extent the FAC is alleging a Section 2 conspiracy to monopolize claim, the conspiracy claim would fail for the same reason as the Section 1 conspiracy claim fails.

*Venture v. Nat'l Broad. Co.*, 219 F.3d 92, 103 (2d Cir. 2000) (Section 1 claims).  In *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984), the Supreme Court recognized that Congress enacted the Sherman Act to prevent the anticompetitive effect of previously separate and competing entities combining to act as one for their common benefit.  *See Copperweld,* 476 U.S. at 769.  Thus it held that the coordinated activity of a parent and its wholly-owned subsidiary must be viewed as that of a single enterprise for purposes of Section 1 of the Sherman Act and therefore the notion of an "agreement" lacks any meaning in such circumstances.  *Id*. at 771-72.

Plaintiff seeks to avoid *Copperweld* by alleging – solely on "information and belief" – that the "Foxconn Defendants" are capable of conspiring with each other because they are not "wholly owned subsidiaries" of another Defendant.  (FAC ¶ 6).  Plaintiff's allegations do not meet its pleading burden under *Copperweld*, as extended by subsequent lower court decisions.

Since *Copperweld,* the decisions of lower courts have made clear that a parent corporation cannot legally conspire with a majority-owned subsidiary.  *See Rosen v. Hyundai Group (Korea),* 829 F. Supp. 41, 45 n.6 (E.D.N.Y 1993) (no conspiracy where subsidiary was owned 80 percent by parent); *Direct Media Corp. v. Camden Tel. & Tel*., 989 F.Supp. 1211, 1217 (S.D. Ga. 1997) (no conspiracy between parent and 51 percent-owned subsidiary); *Novatel Comm'ns v. Cellular Tel. Supply*, No. Civ. A. No. C85-2674A, 1986 WL 15507, at *6 (N.D. Ga. Dec. 23, 1986) (parent cannot conspire with 51 percent-owned subsidiary).

Likewise, courts have held that corporations with common ownership cannot conspire under the Sherman Act.  *See Guzowski v. Hartman*, 969 F.2d 211, 214 (6th Cir. 1992) (two wholly owned subsidiaries of the same parent);  *Shaw v. Rolex Watch, U.S.A., Inc.,* 673 F. Supp. 674, 678 (S.D.N.Y. 1987) (two companies under common ownership and control); *Bell Atl. Bus.*

*Sys Servs. v. Hitachi Data Sys. Corp.*, 849 F. Supp. 702, 705-07 (N.D. Cal. 1994) (a wholly

owned subsidiary and a partially owned subsidiary of the same parent).

As invited by the Court at the pre-motion conference on February 6, 2013, Defendants'

counsel has provided Lotes' counsel with a complete copy of Defendant Hon Hai Precision

Industrial Co. Ltd.'s ("Hon Hai") 420 page 2011 Annual Report on February 8, 2013.  Hon Hai's

2011 Annual Report was published on April 30, 2012, five months before Plaintiff filed its

original complaint in this case, and is also available along with other publicly filed Hon Hai

documents on the Taiwan Stock Exchange website at http://mops.twse.com.tw (Hon Hai code

2317).  Plaintiff acknowledges in the FAC that both Plaintiff Lotes and Defendant Hon Hai are

publicly listed and traded companies on both the Taiwan Stock Exchange and Hon Hai is also

publicly listed and traded on the London Stock Exchange (FAC ¶¶ 1, 2).

The corporate relationships of the five defendants named in this case are detailed in Hon

Hai's 2011 Annual Report at pages 312, 316, 321, 330, and 338, which are translated and

attached hereto.  (*See* Relevant Pages of Hon Hai Precision Industry Co., Ltd. 2011 Annual

Report and Attached Translation, Ex. B-C.)[3]  The corporate organization charts on those pages

confirm that two of the named Defendants Foxconn International, Inc., and Foxconn (Kunshan)

are 100% wholly-owned subsidiaries of Defendant Hon Hai, while the other two Defendants,

Foxconn Electronics, Inc., (56.65% owned by Hon Hai) and Foxconn International Holding Ltd.

(70.33% owned by Hon Hai) are controlled by Hon Hai via its majority ownership interests.

All of the Defendants are thus either wholly or majority owned and controlled by

Defendant Hon Hai, and are therefore not legally capable of conspiring with Hon Hai or with one

---

[3] For the Court's convenience, Defendants have only attached the relevant pages from Hon Hai's
2011 Annual Report that relate to Hon Hai's ownership interests in the other Defendants.  If
the Court wishes, Defendants will provide a full copy of the Annual Report for the Court's
review.

another to commit an antitrust violation under Section 1 of the Sherman Act.  This court may take judicial notice of Hon Hai's 2011 Annual Report to make that determination.  *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)(taking judicial notice of documents filed with the SEC); *Public Patent Found. v. Quigley Corp.*, No. 10 Civ. 1552 (BSJ)(THK), 2011 WL 3055382, at *4 (S.D.N.Y. July 20, 2011) (taking judicial notice of publicly filed annual reports).

## E.    Plaintiff Alleges No Facts That Would Plausibly Suggest a "Dangerous Probability" That Any Defendant Will Acquire Monopoly Power.

To state an attempted monopolization claim, a plaintiff must allege (1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power.  *See Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993).  As demonstrated in sections IV.A - D *supra*, Plaintiff fails to allege that Defendants engaged in any "predatory or anti-competitive conduct."  *See Hon Hai Precision Industry Co. v. Molex, Inc.*, No. 08-c-5582, 2009 WL 310890, at *2 (N.D. Ill. Feb. 9, 2009) (dismissing attempted monopolization claim because, while defendant's "conduct may have been a breach of an agreement with [the standards setting organization] or a breach of the License Agreement [with the plaintiff], it does not constitute predatory or anticompetitive conduct.").  Plaintiff also fails to allege facts plausibly suggesting that there is a "dangerous probability" that any Defendant will achieve monopoly power.  This independently requires dismissal of Plaintiff's attempted monopolization claim (Seventh Count).

To meet its burden of pleading a "dangerous probability of monopolization," a plaintiff must allege both the relevant market and the defendant's ability to lessen or destroy competition in that market.  *See Spectrum*, 506 U.S. at 456.  Market share analysis is an essential part of determining whether market power exists or is threatened.  *See Int'l Distrib. Ctrs., Inc. v. Walsh Trucking*, 812 F.2d 786, 792 (2d Cir. 1987).  A court must also consider other factors such as

-18-

strength of competition, industry trends, barriers to entry, nature of anticompetitive conduct, and elasticity of consumer demand in assessing whether the defendant has a dangerous probability of achieving monopoly power.  *See id.*  A firm can be a monopolist only in a market in which it competes.  *See Discon, Inc. v. NYNEX Corp.,* 93 F.3d 1055, 1061-62 (2d Cir. 1996)("it is axiomatic that a firm cannot monopolize a market in which it does not compete").

Plaintiff here alleges that the relevant market is the market for USB 3.0 connectors sold in the United States.  (FAC ¶ 65).  Plaintiff also alleges that the patent enforcement proceedings threaten competition in the United States for motherboards and notebooks containing USB 3.0 connectors.  (*Id.* at ¶ 69).  To address Defendants' arguments in their initial motion to dismiss, Plaintiff now provides a gamut of different market share numbers related to downstream markets, but none for the specific market that it alleges Defendants seek to monopolize – USB 3.0 connectors sold in the United States.  For example, Plaintiff alleges that Foxconn supplies the "USB components" for roughly 50 percent of all notebooks sold *worldwide* and Lotes' share is 10-15 percent (*Id.* at ¶¶ 21, 35), but Plaintiff fails to plead any specific facts about the sales or market share of any Defendant (or any other company) in the purported geographic market – the United States – of the relevant product – USB 3.0 connectors.  Having failed to allege market shares of the relevant product in the relevant geographic market alleged in the FAC, it is no surprise that Plaintiff cannot establish monopoly power or a dangerous probability of any Defendant's achieving monopoly power in the alleged market.

Plaintiff attempts to address this deficit in the FAC by approximating the percentage of specific customers' purchases of USB 3.0 connectors from Lotes' and Foxconn.  (*Id.* at ¶ 22). The information that a certain customer purchases 25 percent of its USB 3.0 connectors from Foxconn and 20 percent from Lotes is irrelevant because it does not provide any information

from which one can approximate Defendants' U.S. market share, the size of the USB 3.0 market in the U.S., or the volume of Defendants' sales in that market.[4]

Plaintiff also argues that Defendant's patents are a barrier to entry in the alleged market, but it identifies no companies other than itself allegedly prevented from competing by those patents.  The Complaint alleges there are other companies making USB 3.0 products, but it alleges no facts to suggest those companies are unable to prevent the exercise of market power by Defendants.  To the contrary, Plaintiff states that in addition to the two USB 3.0 connector products that are the subject of the patent litigation, it currently manufactures and sells eleven additional USB 3.0 connector product lines that are not subject to any patent claims.  (*Id.* at ¶ 61).  These allegations make clear that Defendants cannot use the patent litigation against two of thirteen products of one company to "leverage their power into a monopolistic position" like Plaintiff alleges.  (*Id.* at ¶ 73).

Without allegations here of any Defendant's share or market power or other allegations regarding the structure of the alleged relevant market, Plaintiff's attempted monopolization claim must fail.  *See Bayer Schering Pharma AG v. Bayer Healthcare*, 813 F. Supp. 2d 569, 578-79 (S.D.N.Y. 2011) (conclusory and speculative information on sales or market share do not establish a dangerous probability of achieving monopoly power).

---

[4] Plaintiff also alleges that Defendants are using the patent enforcement proceedings to monopolize the market for motherboards and notebooks containing USB 3.0 connectors. (FAC ¶¶ 69, 71, 73).  Plaintiff has no standing to raise or challenge injuries to competition in these markets because it has not alleged that it competes with Defendants in the sale of notebook computers and motherboards containing USB 3.0 connectors.  *See Winstar Commc'ns v. Equity Office Prop.*, 170 Fed. Appx. 740, 742 (2d Cir. 2006) (no standing when plaintiff alleged injuries that bear upon a different market in which it did not participate).

F.      **Plaintiff's Allegations Do Not Establish That The Contributors Agreement Was Breached.**

Plaintiff claims that the Contributors Agreement gives it a right to a RAND-Zero license to the patents asserted in China, and that the assertion of those patent rights was anticompetitive. The Contributors Agreement only requires "Necessary Claims" to be licensed on RAND-Zero terms. The Contributors Agreement defines "Necessary Claims" to mean "claims of a patent or patent application that . . . it is not possible to avoid infringing [while implementing the standard] because there is no commercially reasonable non-infringing alternative for implementing such portions of the Final Specification within the bounds of the Scope." (Contributors Agreement § 1.8). The Contributors Agreement makes clear that only "Necessary Claims" of a Contributor's "Contribution" need to be licensed on RAND-Zero terms; and that the obligation does not extend to any other patent claims "even if contained in the same patent or patent application as the Necessary Claims." (*Id.*).

The FAC does not allege any facts to support its conclusory allegation that the specific patent *claims* currently asserted in those lawsuits in China are actually "Necessary Claims" as defined in the Contributors Agreement. (FAC ¶ 53). It does not even allege which claims of the referenced patents are being asserted in China. In fact, the factual allegations in the FAC contradict the conclusion in Paragraph 53 of the FAC that the claims asserted are all "Necessary Claims" under the Contributors Agreement. Plaintiff alleges that it manufactures and sells thirteen separate USB 3.0 connector products. (FAC at ¶ 61). Only two of those thirteen products are at issue in the China lawsuits. If the patent *claims* currently asserted in the China lawsuits were truly necessary to practice the USB 3.0 standard, then *all* of Lotes' USB 3.0 products should surely infringe those claims not just two of thirteen. It is telling that Lotes has made no such allegations.

-21-

G.     **Plaintiff's Promissory Estoppel Claims Are Improperly Pled**

Plaintiff asserts two promissory estoppel claims, one based on its allegation that Defendants promised in the Contributors Agreement to license Necessary Claims on RAND-Zero terms and the other based on its allegation that Defendants committed to license Non-Necessary Claims on RAND terms.  (FAC ¶ 83).  Neither claim is valid.

The promissory estoppel claim based on the Defendants assertion of patent rights for purported Necessary Claims for USB 3.0 connectors is facially invalid because those claims are predicated on an alleged breach of the written Contributors Agreement.  Under New York law, relief under promissory estoppel is unavailable where an express contract covers the subject matter.  *See Karmilowicz v. Hartford Fin. Servs.*, No. 11-3284-cv, 2012 WL 3734449, at *4 (2d Cir. Aug. 30, 2012).  Plaintiff here alleges a promissory estoppel claim as an alternative theory if the breach of contract claim fails.  However, because the purported "RAND-Zero" obligation underlying Plaintiff's claims arises from the written Contributors Agreement, that written agreement governs Defendants' purported contractual obligations and Plaintiff cannot rely on a promissory estoppel theory.  *See R.B. Ventures, Ltd. v. Shane,* 112 F.3d 54, 60 (2d Cir. 1997) (equitable remedies inapplicable if there is an enforceable contract governing the subject matter).

Plaintiff's promissory estoppel claim on patent claims that are not necessary to practice the USB 3.0 standard fare no better.  Under New York law, a claim for promissory estoppel requires a showing of (1) a clear and unambiguous promise, (2) a reasonable and foreseeable reliance by the party to whom the promise is made, and (3) an injury sustained by the party asserting the estoppel by reason of his reliance.  *See Arcadian Phosphates, Inv. v. Arcadian Corp.,* 884 F.2d 69, 73 (2d Cir. 1989).

Plaintiff has not alleged that it has taken any actions in detrimental reliance based on Defendants' singular statement that it would license the Non-Necessary Claims.  Logically, there could not have been such detrimental reliance given that Lotes moved ahead with incorporating the technology from those Non-Necessary Claims into its products without acquiring a license or negotiating the RAND fee that, according to its allegation was a necessary condition of Defendants alleged promise.  (FAC ¶ 48).  In fact, Plaintiff explicitly refused to seek a license for the Non-Necessary USB 3.0 patent claims owned by Defendants (including those at issue in the China lawsuit), contending it was interested in a license "only for the Necessary Claims."  (Ex. A).  Because there is no detrimental reliance on a promise to license Non-Necessary Claims, there can be no injury based on such reliance.

### H.    Plaintiff's Waiver Claim Is Facially Invalid.

Plaintiff's waiver claim should be dismissed because waiver is not a cause of action under New York law.  *See Ixe Banco v. MBNA Am. Bank, N.A.*, No. 07-civ-0432(LAP), 2008 WL 650403, at *9 n.5 (S.D.N.Y. Mar. 7, 2008) (dismissing waiver cause of action); *Franklin v. BAC Home Loans Servicing*, No. 3:10-cv-1174-M, 2012 WL 2679496, at *11-12 (N.D.Tex. June 6, 2012) (dismissing waiver claim and stating that waiver does not create liability).  "Waiver is not a cause of action because it cannot create liability in and of itself, and a cause of action cannot be based on a waiver."  *See* 18 Am. Jur. 2d, *Estoppel and Waiver* § 183 (2012).

### I.    Plaintiff's Right To A License For The Claims At Issue In the China Lawsuit Should Be Decided By the China Court.

Plaintiff's declaratory judgment claim (Fifth Count) asks the Court to hold that Plaintiff has a right to any Necessary patents under the Contributors Agreement.  Pursuant to 28 U.S.C. § 2201, a federal court "may declare the rights and other legal relations of any interested party in a case of actual controversy within its jurisdiction."  Courts operate under the principle that only a

-23-

foreign court applying its law can determine infringement of patents granted under the foreign jurisdiction's law.  *See Mars Inc. v. Kabushiki-Kaisa Nippon Conlux*, 24 F.3d 1368 (Fed. Cir. 1994) (declining to hear a Japanese patent infringement claim because there were no similarities to the U.S. patent infringement claim and because the foreign claim involved different acts, different devices and different governing laws); *Ideal Instruments v. Rivard Instruments*, 434 F. Supp. 2d 598, 631 (N.D. Iowa 2006) (declining to exercise jurisdiction over claims for declaratory judgment of noninfringement over Canadian patents).

Because the only allegedly Necessary patents at issue here that Plaintiff has identified are Chinese patents, which are governed by Chinese law, and are already the subject of litigation between Plaintiff and one of the unserved Defendants in China, the Court should defer to China's courts to determine the infringement issues and dismiss Plaintiff's declaratory judgment claims. Declaratory judgment is not available for the unidentified Necessary and Non-Necessary patents. *See Components, Inc. v. Western Elec. Co.*, 318 F. Supp. 959, 961 (D. Maine 1970) (dismissing declaratory judgment claim for unidentified patents).

## V.   **CONCLUSION**

For the above reasons, Defendants respectfully request that the Court grant their Motion to Dismiss the FAC in its entirety for failure to state any claim upon which relief can be granted.

Dated: February 11, 2013

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP
By:/s/ Thomas J. Lang

Brian A. Herman
David A. Snider
101 Park Avenue
New York, N.Y. 10178
(202) 309-6909/6223
(202) 309-6001 (fax)

Thomas J. Lang
J. Clayton Everett, Jr.
Swati V. Rawani
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-5869
(202) 739-5609/5860/5851
(202) 739-3001 (fax)

*Counsel for Hon Hai Precision Industry
Co., Ltd., Foxconn International, Inc., and
Foxconn Electronics, Inc.*